12200

EDWARDS v. COLEMAN

(138 S. E., 42)

1. BROKERS—EVIDENCE HELD TO ESTABLISH THAT PERSON CONTRACTING SALE OF LAND WAS ONLY REAL ESTATE BROKER, WITH NO AUTHORITY TO BIND OWNER.—Evidence, in action for damages for breach of alleged contract of sale of tract of land, *held* to estblish that person with whom plaintiff contracted for purchase thereof was only a real estate broker, and had no authority as such to enter into contract of sale that was binding on defendant.

2. PRINCIPAL AND AGENT—EMPLOYMENT OF AGENT TO FIND PURCHASER CONFERS ON SUCH AGENT NO AUTHORITY TO BIND PRINCIPAL BEYOND INSTRUCTIONS.—Mere employment of an agent to find a purchaser and bring him to owner confers on such agent no authority to bind his principal beyond his instructions.

3. BROKERS—REAL ESTATE BROKER IS "SPECIAL AGENT," WITH LIMITED AUTHORITY, AND STRICTLY CONFINED TO INSTRUCTIONS GIVEN HIM.—A real estate broker is a "special agent" of limited authority, and is strictly confined to instructions given, and a third party dealing with him does so at his own peril.

Before SHIPP, J., Oconee, October, 1925. Affirmed.

Action by William T. Edwards against E. M. Coleman. Judgment of nonsuit, and plaintiff appeals. Affirmed.

*Messrs. Herndon & Thompson,* for appellant, cite: *Agency may be proved by declaration of agent taken in connection with circumstances:* 97 S. C., 148, 150; 112 S. C., 109; 135 S. E., 473; 124 S. C., 346, 350; 69 S. C., 327,

Note: On power of real estate broker to make binding contract of sale of real estate, see annotation in 23 L. R. A. (N. S.), 982; 4 R. C. L., 262; 1 R. C. L. Supp., 1099; 4 R. C. L. Supp., 259; 5 R. C. L. Supp., 233; 6 R. C. L. Supp., 245.

330; 133 S. E., 834, 835; 83 S. C., 30; 86 S. C., 8. *Same by parol testimony of agent:* 59 S. C., 115, 135; 72 S. C., 556, 560; 84 S. C., 197; 102 S. C., 434. *Agency a question for jury to determine from testimony:* 73 S. C., 48, 57; 126 S. E., 432; 126 S. E., 434; 97 S. C., 148, 150; 113 S. C., 497, 501; 114 S. C., 488, 490; 128 S. C., 470, 474; 105 S. E., 491; 129 S. C., 400. *Agency to sell land not required to be in writing:* 72 S. C., 556, 560; 84 S. C., 197, 202; 2 Hill Ch., 584. *Agent not authorized in writing may sign memorandum in name of principal for purpose of complying with Statutes of frauds:* 21 R. C. L., 820; 1 Am. & Eng. Enc. Law., 955. *Same, unless Statute states authority must be in writing:* 27 A. L. R., 607, 616; Sec. 5516 Civ. Code, 1922. *Land sufficiently described:* 13 Rich. L., 72; 2 Rich. L., 146; 8 R. C. L., 1081; 20 S. E., 831; 48 S. C., 506. *Cases distinguished:* 86 S. C., 76; *"Broker and agent":* 129 S. C., 406; 57 S. C., 280, 287. *Case at bar concluded by principle announced:* 48 S. C., 496. *Executed authority of agent cannot be repudiated:* 1 Am. & Eng. Enc. Law, 1217. *When contract completed:* 6 L. R. A. (N. S.), 1016. *Acts or agent after authority revoked, bind principal as against third party who, in absence of notice of revocation, relies upon its continued existence:* 41 L. R. A. (N. S.), 663.

*Messrs. Shelor & Hughs,* for respondent, cite: *Whether brokerage contract or one of general agency, question of law for Court:* 17 S. C., 477; 19 S. C., 121; 24 S. C., 493; 114 S. C., 32. *Authorization to effect sale does not authorize broker to execute contract of sale binding on principal:* 86 S. C., 79; Ann. Cas., 1917-A, 520, 523; 4 R. C. L., Par. 14, P. 262. *Agent cannot bind principal beyond scope of his authority; one dealing with him bound to ascertain extent of authority:* 127 S. E., 564; 123 S. E., 845; 65 S. C., 544; 84 S. C., 197. *Broker is special agent:* 86 S. C., 167. *No authority to sign contract whether authority*

*oral or written:* 4 R. C. L., Par. 6, P. 249; *Id.,* Par. 3, P. 244.

May 4, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This is an action for damages for breach of an alleged contract of sale of a tract of land in Oconee County. From an order of nonsuit granted by Judge Shipp, the plaintiff has appealed to this Court.

The complaint, briefly stated, alleged substantially that on October 23, 1924, the defendant owned in fee simple a tract of land containing 24.27 acres; that on the date mentioned plaintiff and defendant entered into an agreement, in writing, whereby plaintiff was to purchase and the defendant to sell the tract of land for the price of $3,000.00; that, upon the execution of the agreement, plaintiff paid to one Ellison, alleged agent of the defendant, the sum of $10.00 as part payment of the purchase price, and that on October 31, 1924, plaintiff tendered to said alleged agent the balance of the agreed purchase money and demanded a conveyance of the land; that the defendant refused to execute and deliver such conveyance, and, in violation of his agreement, had conveyed the land to another party, to the plaintiff's damage in the sum of $1,500.00; that plaintiff had always been ready, willing, and able to fulfill the contract on his part, and had performed all the conditions so far as he could. The defendant admitted ownership of the land but denied that he had made any contract of sale with the plaintiff, and denied that Ellison had authority as his agent to make such sale.

The order of nonsuit, omitting formal parts, was as follows:

"That the testimony shows that the contract between the defendant, E. M. Coleman, and C. H. Ellison, which is made up of certain letters and telegrams, created the relation between them of principal and broker, and that under

the said contract C. H. Ellison was authorized to find a purchaser who was ready, able, and willing to purchase on the terms here in question, but that he had no authority to make an absolute sale, or to bind the defendant by any contract of sale."

At the trial, plaintiff sought to show the authority of Ellison to make a sale of the tract of land, and to enter into an agreement of sale by the defendant to the plaintiff, by offering in evidence certain letters and telegrams which passed between Ellison and the defendant, and declarations of Ellison as to his agency and authority. The telegrams and letters, which we think are of importance, are reproduced here:

"Seneca, S. C. 10/12/1924.

"Dr. E. M. Coleman, St. Petersburg, Fla.—Dear Dock: I have a offer of two hundred dollars for one acre of your land over next to Phate Harris' land, joining Harris and Morgan—it will be cash or at least $150.00 cash, and balance in one year, but I think I will get two hundred dollars, that is the price you wrote me some time ago to sell it for. What is the least you will take for your tract of the Blue Ridge Railroad on both sides of the tract—about 22 acres in all? There is no real estate selling here now, but I hope it will pick up a little later—please let me hear from you by return mail, so I will know how to act about the one acre also.

"With kindest regards to yourself and wife, I am

"Very truly yours.          C. H. ELLISON.

"(Over)

"T. B. Jones is trying to sell your 22-acre tract, so I was told to-day by a man who said he had tried to sell it to him.

"C. H. E."

"St. Petersburg, Fla., Oct. 16, 1924.

"Mr. C. H. Ellison: Yours of the 12th just received, and am answering at once as requested.

"I will accept the offer for the one acre of land you mention. Of course I would rather have cash, but will take $150.00 cash, balance one year, so if you will have deed made out and send to me will have my wife sign it with me and return by return mail.

"I note with interest that there has been some inquires as to the 22-acre tract south of the R. R. tract as I have just received a letter from Mr. Earl that he had obtained a judgment on the mortgage on this place and I am compelled to get the money to pay this off at once or before Nov. 1. I have had one or two letters from T. B. Jones in regard to selling this property to him, but his offer was only $2,500.00 which now would not pay the indebtedness on same and could not be accepted.

"Under the circumstances I am willing to sacrifice this property for $3,000.00 if the sale is made at once. It will take about this amount to settle this judgment with all the costs is the reason of this offer. I have had the offer of a loan so as to pay this off, but if possible to avoid it, I would much rather not have to borrow the money. I would greatly appreciate if it you would write me at once the possibility of a sale as I wish to conclude the loan so as to clear up this judgment at once. This offer only holds for an immediate sale as I would not sell for this price after I have borrowed the money to pay this debt.

"I wrote you a short while ago in regards to having the road just south of the Jones warehouse closed but to date have had no reply from you. I would now like to advise that the road not be closed until this debt has been satisfied, will advise you later what to do. I would like to ask if you received the letter I wrote you in this regards as I wrote another important letter to another party by the same mail but have had no reply and am anxious to know if these letters were received or not.

"Would appreciate it if you will write me as soon as possible in regards to all these matters.

"My wife joins me in best wishes to you and Mrs. Ellison. Would like that this letter is considered confidential.

　　　· "Yours truly,　　　　　E. M. COLEMAN."

TELEGRAM

　　　　　　　　"Seneca, S. C. 10—22, 1924.

"Dr. E. M. Coleman, C–C Hitching Post, St. Petersburg, Fla.　Wire very least that will buy Blue Ridge tract cash. C. H. Ellison.　2 A. M. VV 1020 A"

TELEGRAM

　　　　"St. Petersburg. Fla. 1922 pm 10—22, 1924.

"P. H. Ellison, Seneca, S. C.　Immediate sale three thousand dollars cash considering another proposition immediate reply requested.　E. M. Coleman, 124 pm."

TELEGRAM

　　　　　　　　"Seneca, S. C. 10—23—1924.

"Dr. E. M. Coleman, C–C Hitching Post, St. Petersburg, Fla.　Have cash offer $2,750.00 for property answer at once.　C. H. Ellison.　3 AM VV"

TELEGRAM

　　　　"7x11 St. Petersburg, Fla. 1101 am 10—23.

"C. H. Ellison, Seneca, S. C. · Cannot consider less than three thousand cash must know at once.　E. M. Coleman, 1002 am."

TELEGRAM

　　　　　　　　"Seneca, S. C. 10—23, 1924.　.

　· "Dr. E. M. Coleman, C–C Hitching Post, St. Petersburg, Fla.　Have sold property for three thousand dollars cash forwarding deed to be executed confirm sale by wire.　C. H. Ellison.　7 AM W V—225 p."

TELEGRAM

　　　"2X. K. 12 M. St. Petersburg, Fla. Oct. 23, 23.

"C. H. Ellison, Seneca, S. C.　Have accepted offer of

three thousand dollars from other party for land. E. M. Coleman, 1223 AM."

The written instrument delivered to the plaintiff, Edwards, by Ellison, the alleged agent, was as follows:

"Seneca, S. C., Oct. 23rd, 1924.

"Received of W. T. Edwards $10.00 as part payment on 24 and 27—100 acres, more or less, of land belonging to E. M. Coleman, situate, lying and being in County of Oconee, State of South Carolina, just outside of town lines of Seneca, S. C., same being the tract of land as shown by map of C. L. Dean, surveyor, November 30, 1921. On south side of Blue Ridge Railroad track. Upon payment of the further sum of $2,990.00, balance (and this is to be paid as soon as deed can be mailed to E. M. Coleman, for signature and returned by him to C. H. Ellison), this deal is to be completed.                C. H. ELLISON,

"Agent for E. M. Coleman."

It seems the deed was never sent to the defendant for execution.

The nineteen exceptions need not be considered separrately. They raise practically the same question.

In our opinion, the Circuit Judge was right in granting the nonsuit. We are satisfied that under the testimony offered it was clear that Ellison was only a real estate broker, and that he had no authority as such to enter into a contract of sale that was binding upon the defendant. We think the testimony is clear that Ellison was only an intermediary, or go-between, receiving offers and transmitting them to the defendant for acceptance or rejection, and that he had no delegated authority to complete a sale of the defendant's land.

There is a great distinction between the employment of one to find a purchaser for the land of another, and the employment of one to complete and close a sale for the land. In the former case, the broker finds the prospective purchaser and brings him to the owner of the land, who

completes the sale with the purchaser. In the latter case, the agent not only finds the purchaser, but enters into a contract of sale that is binding upon the principal. The evidence here shows that Ellison did not have—in fact he did not pretend to have—authority to make a complete and binding sale of the tract of land in question, for he wired for confirmation, an act wholly unnecessary if he had full authority to close the sale.

2, 3    The owner of land undoubtedly has it within his power to clothe his agent with power to both find a purchaser and to make a complete and binding sale. But the mere employment of an agent to find a purchaser and bring him to the owner, confers upon such agent no authority to bind his principal beyond his instructions. We think it would be a dangerous doctrine if one merely authorized to find a purchaser for property at a fixed price could, without further negotiations with the owner, enter into a contract for the sale thereof that would be binding upon the owner. A real estate broker is a special agent of limited authority, and is strictly confined to the instructions given him, and a third party dealing with him does so at his own peril. We think our conclusions are amply sustained by authority. See 9 *Corpus Juris,* 525 and 526. *Shillinglaw v. Sims,* 86 S. C., 76; 67 S. E., 906. *McCallum v. Grier,* 86 S. C., 162; 68 S. E., 466; 138 Am. St. Rep., 1037. *Chandler v. Franklin,* 65 S. C., 544; 44 S. E., 70.

The judgment of this Court is that all the exceptions be dismissed, and the order of nonsuit be affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, STABLER, and CARTER concur.