Coös, }
March 3, 1931. }

D. N. TOOHEY & CO. *v.* HYMAN DAVIS.

NATHAN COHEN *v.* SAME.

*Ovide J. Coulombe* and *Ira W. Thayer* (by brief and orally), for the plaintiff.

*Warren W. James, Edmund Sullivan* and *Crawford D. Hening (Mr. James* and *Mr. Hening* orally), for the defendant.

SNOW, J.    The defendant was a merchant, occupying a store in one of the two blocks which were the subject of the agreements in these suits.    The blocks were located in the central business section of Berlin and the property of the wife of the defendant, in whose name

the title stood. D. N. Toohey & Co. was a partnership engaged in the real estate business in Berlin of which Thomas N. Toohey was manager and salesman. For convenience the company and Toohey will be referred to interchangeably as Toohey.

A written agreement was entered into by the defendant and Toohey on August 11, 1928 which provided: "whereas Hyman Davis is desiring to dispose of the property on Main Street belonging to him and being on land sixty feet wide and one hundred seven feet and six inches deep, buildings thereon situated known as the Sutton Block and occupied by said Davis and et als., and the Forbush Block occupied by Danneman and Weirner, and whereas the said D. N. Toohey and Company have agreed to use their best efforts and dispose of the same.

"Now in consideration of such efforts Hyman Davis agrees to pay said Toohey and Company the sum of four percent of the amount realized from said property by said Davis, said four percent to be paid said Toohey and Company in any event that said property may be sold by them or the said Hyman Davis within a period of six months from date." An agreement supplementary thereto was made on September 5th as follows: "In lieu of the agreement made between Hyman Davis and D. N. Toohey and Company, for the sale of the said Davis premises, dated the eleventh day of August, 1928, it is now agreed by said parties that the said Hyman Davis is to receive sixty thousand dollars ($60,000.00) net for his property, and the said D. N. Toohey is to receive anything over and above said sixty thousand dollars ($60,000.00) which shall be paid for said premises."

These papers will hereinafter be referred to as the agency agreement although, as will be later seen, the phrase is descriptive of its character only in a limited sense.

On September 26th at Berlin, Toohey, assuming to act under the foregoing agreements, subscribed the defendant's name to a sale agreement which purported to bind him to convey to the plaintiff Cohen, for a consideration of $63,750, the said property,—"except a certain leasehold," "upon, and subject to, the following terms and stipulations, namely:—

"1. That the purchaser shall pay to the said vendor, upon execution of these presents, a deposit of five hundred dollars ($500.00) on and part of his purchase money, said deposit to be placed in escrow in the hands of Ovide J. Coulombe, an attorney in Berlin, to be delivered to the said Davis when all the conditions of this sale have been complied with, and pay him the residue thereof on the time set for

the completion of the purchase, which shall be sixty (60) days from date, and the time, in all respects, shall be of the essence of the contract.

"2. The vendor shall prepare, or cause to be prepared, at his own expense, a proper deed of conveyance (with full covenants of warranty) of the premises to the purchaser and shall deliver such deed, or cause it to be delivered, to the purchaser, or his attorney, for examination.

"3. The possession shall be retained by the vendor up to the said date fixed for completion of the purchase when the purchaser shall pay the residue of the purchase money and the vendor shall execute such deeds. Whereupon possession shall be delivered immediately to the purchaser.

"4. All taxes, water rates, upon said property shall be apportioned between him and the purchaser as from that day, and it is understood that the stipulations herein shall apply to and bind the heirs, executors, administrators, and assigns of the respective parties hereto."

In support of his exceptions to the admission in evidence of the sale agreement, and to the denial of his motion for a directed verdict in the Cohen action, the defendant contends that such agreement was unauthorized by the agency agreement. This involves the interpretation of the latter.

It is nearly universally conceded that the mere employment of a real estate broker to sell land carries no implied authority to bind his employer by a contract of sale. 4 R. C. L., Brokers, *sec.* 14; 1 Mechem, Agency, (2d *ed.*), 797; Walker, Real Estate Agency, (2d *ed.*), 31, 32 (1922). The theory on which this doctrine rests is that the character of a broker's undertaking is well known and presumptively his employment, though in writing, is in his capacity as a negotiator merely. 1 Mechem, Agency, 792, *supra.* Fundamentally, the duty he assumes is to bring the minds of the buyer and seller to an agreement for a sale and upon the price and terms upon which it is to be made. *Parker* v. *Estabrook*, 68 N. H. 349, 350.

Practical reasons for this limitation of authority is well expressed in the often quoted, and much cited, case of *Halsey* v. *Monteiro*, 92 Va. 581, 583. "A sale of real estate involves the adjustment of many matters besides fixing the price . . . all of which require conference and time for their completion. They are for the determination of the owner, and do not pertain to the duties and are not within the authority of a real estate agent. For obvious reasons, therefore, the law wisely withholds from him any implied authority to sign a con-

tract of sale in behalf of his principal." *McCullough* v. *Hitchcock*, 71 Conn. 401; *Jones* v. *Howard*, 234 Ill. 404, 410; *Brandrup* v. *Britten*, 11 N. D. 376, 379. It follows that one asserting a power in a broker to bind his principal in a sale contract has the burden of showing that such was the intention. This must appear from the agency contract construed in the light of all the existing conditions and circumstances. *Whitehouse* v. *Gerdis*, 95 Neb. 228, 234; 1 Mechem, Agency, s. 798.

The phrase "to sell" in contracts with real estate brokers "has acquired this restricted and conventional meaning, that is, to secure a purchaser, and . . . standing alone, . . . is not sufficient to authorize the agent to enter into a contract of sale, binding the principal." *Bacon* v. *Davis*, 9 Cal. App. 83, 93; *Lindley* v. *Keim*, 54 N. J. Eq. 418, 423; *Stengel* v. *Seargeant*, 74 N. J. Eq. 20, 28; Walker, Real Estate Agency, *supra*, 33, 34; 4 R. C. L., Brokers, s. 14. The industry of counsel has provided us with an exhaustive summary of the decisions in the majority of the American jurisdictions upon the question of the meaning of the words "to sell" in real estate broker's contracts, both when standing alone, and when construed with other language and in the light of the situation of the parties or both. These are too numerous for citation here and will be found in Briefs and Cases, No. 2389.

While the original agency agreement here recites in the preamble that the defendant "is desiring to dispose of the property" and that Toohey & Co. "have agreed to use their best efforts and dispose of the same" the body of the agreement uses the terms "may be sold by them," and the supplement thereto speaks of the contract as an "agreement . . . for the sale" of the property. If in some situations "to dispose of" might, and should, be considered to have a more extended meaning than "to sell," it appears here to have been used interchangeably with the latter phrase. In any event the phrase "to dispose of" has no technical signification (*Phelps* v. *Harris*, 101 U. S. 370, 381) which requires us to disregard the evidence tending to show that the employment of Toohey was merely as a real estate broker.

The form and character of the paper of August 11 are significant. It is only by implication an agency agreement "to sell." It purports only to fix the compensation of the broker in case of a sale. The power to "dispose of" or to sell is referred to only incidentally in the prefatory recital, which is so far informal that it does not even mention the price fixed on the property. The agreement was ostensibly drawn with the single purpose of entitling Toohey to share in the

commission in case of any sale whether made by him or his principal. That is all it purports to do. While by its recital it concedes and assumes the existence of a contract to sell, it does not attempt to define the scope of the agency, and therefore evidences no intention to confer upon the broker any authority beyond that impliedly incident to his calling. It tends rather to confirm its limitation thereto.

Affirmative evidence of the want of any intention to bestow upon Toohey a right to bind the defendant by contract of sale is to be found in the fact that the agency agreement contemplated the retention in the defendant of a right to sell. What he could do by himself he could do by other agents. It is improbable that one would consciously lay himself open to several suits for breach of contract in case of approximately simultaneous sales by himself or different brokers. The retention of authority to sell in the principal is clearly evidence tending to show the improbability that the parties understood the agreement conferred authority upon the broker to bind the defendant by a sales contract. *Russo* v. *Slawsby*, 84 N. H. 89, 92. In *Schaefer* v. *Millar*, 11 Dom. L. R., 417, 420, 421 an action was brought for specific performance of an agency contract which provided: "I hereby agree to give you the right to sell the above property at the prices mentioned . . . and to pay you a commission . . . Should the property be sold by myself or any other person I agree to give you half the above-mentioned commission . . ." The court said: "I can find no indication of any such intention [to do more than find a purchaser]. In his letter, Dr. Millar reserves the right to sell the lots, either by himself, or through other agents. Now, if he gave to other agents the authority he was giving to the company, as he had a right to do, in what position would he be if the contention of the plaintiff were upheld? If the property increased rapidly in value . . . each agent would readily find a purchaser, and the owner might find himself bound to convey to several different purchasers at the same time. Only in the clearest case will an owner be held to have intentionally placed himself in this position. The fact that the owner might find himself in this position was held in *Wilde* v. *Watson*, 1 L. R. (Ir.) 402, to indicate that there was no intention to authorize the agent to do more than find a purchaser . . . It would, therefore, seem to me to be clear that where an owner gives authority to an estate agent to 'sell his property', and, in such authority, reserves the right to sell the property, either by himself or through other agents, such reservation, being consistent only with an intention on his part to retain the right to finally refuse or accept, is to be interpreted as an intimation that

the agent's authority is limited to finding a purchaser. In such a case, to justify an agent in concluding a binding contract there must appear, in his authority, clear and explicit instructions to do so. Likewise, in *Tomlinson* v. *Allen*, 152 La. 41, 46 where land was listed with a broker reserving "the right to sell . . . ourselves or have other agent to sell the same" it is said "The listing of the property with the broker for sale and the fixing of the price . . . conferred no such power [to bind by sale contract]. Especially is this so in view of the fact that the owner . . . reserved the right to sell it himself, or through another agent." See also *Milne* v. *Kleb*, 44 N. J. Eq. 378, 382.

Other conceded facts, as respects the situation of the parties, tend to show the improbability of an intention to confer upon Toohey authority to bind the defendant. Both parties resided in Berlin in easy communication with each other, rendering unnecessary any unusual powers in the agent to conclude a binding contract. *Milne* v. *Kleb, supra,* 382. The defendant occupied one of the blocks as a merchant conducting a going business. The time of delivering possession of the property to a prospective purchaser may be presumed to have been a matter of sufficient importance to require his personal determination.

It is our conclusion that the agency agreement merely authorized Toohey to secure a purchaser who was willing and able to buy (*Russo* v. *Slawsby, supra*) and did not empower him to bind the defendant by a sale agreement. In so far as the sale agreement tended to show that Toohey had produced a purchaser able and willing to buy it was admissible in the Toohey action. As the exception to the admission thereof was not limited to its use in the Cohen case, the defendant took nothing by this exception. It follows, however, from the foregoing, that the defendant's motion for a nonsuit in the Cohen case should have been granted.

The right of Toohey to a commission under his contract with the defendant is not determined by the ineffectiveness of Toohey's attempt to bind the defendant to a sale to Cohen. He had complied with the terms of his agency contract with the defendant if and when it was shown to the satisfaction of the jury that he produced a purchaser who was able and willing to pay the price authorized. *Russo* v. *Slawsby, supra.* The sufficiency of the evidence to support such a finding is not questioned.

In defence of both suits the defendant, however, filed a special plea of fraud, alleging that Toohey procured the agency agreements from him by false representations, and set up that they were entered into

pursuant to a prior verbal contract by which such agreements were to be effective only if Mrs. Davis should consent to sell and the defendant should be able to procure another store. On these issues the defendant made requests for instructions:

"(1) If you find that the defendant entered into these contracts with the plaintiff Toohey by reason of false, fraudulent and misleading statements made to him by Thomas Toohey, then I instruct you that the plaintiff Toohey Company cannot recover.

"(2) [Upon like findings] . . . I instruct you that the plaintiff Cohen cannot recover.

"(3) If you find that the plaintiff Cohen or his agents . . . knew at the time the contract of September 26th was entered into that the defendant would be unable to carry it out unless his wife consented to sell the property, then your verdict must be for the defendant in the Cohen suit."

The defendant's testimony tended to show that on the date the original agency agreement was executed Toohey called and inquired as to the identity of another agent and his clients who had inspected the property on the day previous; that, upon learning the names and that no trade had been consummated, Toohey solicited a contract, which was declined; that Toohey thereupon left the store and in about fifteen to twenty minutes returned with the draft of the original agency agreement and appealed to the defendant to sign it on the ground of poverty and hard luck, saying "it will be nothing to you if you will sign the paper and I'll get the benefit of . . . a few hundred dollars" which he asserted he would receive from the other agent; that he told Toohey that Mrs. Davis owned the property and that he must have another store to which Toohey replied that "it doesn't matter to me, if the place is sold . I'll get something, and if not, I wouldn't bother you"; that it was understood before he signed the contract with Toohey that "if Mrs. Davis don't want to do it and I don't get the store there was nothing to it"; that "the agreement was that he would sell it if Mrs. Davis agreed and he would get what was coming to him"; that this was all understood before he signed the contract; that the supplementary agreement of September 5th was drawn and executed at the request of the defendant because the first paper did not show how much the defendant was to receive; that "he [Toohey] understood—I told him the circumstances and he says 'It's all right; it stands the same as the beginning, only you're helping me out'."

It could be found on this evidence that the writing of August 11th,

as well as the supplemental agreement of September 5th, was signed subject to a condition precedent namely, that it was to be effective only if Mrs. Davis should consent to sell and the defendant should be successful in obtaining another store. 2 Will., Cont. s. 634; *Piper* v. *Meredith*, 83 N. H. 107, 112; *Steinfield* v. *Mills*, 81 N. H. 152, 155. Mrs. Davis declined to make conveyance to Cohen and the defendant's evidence tended to show that he was unable to obtain another store.

After charging the jury that they were to return a verdict for Toohey if they found the agency agreement a genuine contract and that he had produced a purchaser able and willing, the court said: "I intentionally limit these instructions as to the law governing this Toohey case, because even though the defendant has entered a plea of fraud and has advanced the proposition that there were conditions precedent to the performance of the agreement, not incorporated in the written agreements themselves, I find no evidence in the case sufficient to substantiate these claims and to submit that question to you; and therefore must withdraw from your consideration the claims of fraud, together with all the evidence pertaining thereto, as far as the question of liability is concerned." The defendant excepted in the following language,—"to the refusal of the court to submit the question of fraud to the jury and all evidence relating thereto. Now that's No. 2 and No. 3."

The defendant contends that he saved an exception to the refusal to submit the issue of a condition precedent to his contract with Toohey, while the latter assumes in argument that the exception taken does not cover such exclusion. While apt language was not used in taking the exception, there is some basis for the defendant's claim that the court and parties understood that the exception covered the issues of both fraud and condition precedent. That the court intended to exclude the evidence in support of both issues is plain. Such exclusion is directed in a single sentence following a recital of the plea of fraud and offer to prove such conditions as though they were associated together in the minds of court and counsel. Immediately following such recital the court said "I find no evidence . . . to substantiate these claims . . . [fraud and condition precedent] and therefore must withdraw from your consideration the claims of fraud together with all the evidence pertaining thereto" leaving in the minds of counsel that the court in his reference to "all the evidence pertaining thereto" included that in support of the condition precedent. The exception of counsel was to the "refusal of the court

to submit the question of fraud . . . and all evidence relating thereto." This was followed by express reference to requests which dealt with both issues,—fraud and condition precedent, though the latter was addressed to the Cohen suit. While a more explicit statement of exceptions is to be encouraged, it is our view that the court and counsel must have understood the exception as intended to save the defendant's rights under both issues in the Toohey as well as in the Cohen case. *Gerry* v. *Neugebauer*, 83 N. H. 23, 25 and cases cited. The ruling of the court that there was no evidence which would support the issue of fraud appears to be well founded. But, as there was evidence from which a condition precedent could have been found, the defendant's exception to the refusal to submit that issue is sustained.

The defendant's admission by telephone, to Cohen's agent, who had before him the agency agreement, that he gave Toohey the "paper," and his failure to then call attention to the condition precedent are set up as ground for estoppel in the Cohen suit. It is a sufficient answer to this claim that the sale contract which Cohen claims he was thereby induced to make, was, in material respects, unauthorized by the agency agreement shown his agent. The provisions of the sale agreement excepting the leasehold interest, extending the time of payment, providing for placing the deed in escrow, naming a depositary and fixing the time of delivery of the possession of the premises were not referred to in the paper shown him and were in excess of the broker's implied authority. The contention of the plaintiffs' counsel that ratification by the defendant and Mrs. Davis of the sale agreement to Cohen could be found on the evidence is not supported by the record.

The orders here must be

*New trial in the first case: judgment for the defendant in the second.*

All concurred.