## 17599

W. E. GALLANT, Appellant, v. Mrs. ADville M. TODD, W. P. Bowie and Mrs. Lucia P. Bowie, Respondents

(111 S. E. (2d) 779)

*Messrs. Watkins, Vandiver & Freeman,* of Anderson, *for Appellant,*

*Messrs. Murchison, West & Marshall,* of Camden, and *E. Harry Agnew,* of Anderson, *for Respondents,*

January 4, 1960.

OXNER, Justice.

Counsel for appellant say in their brief that the single question presented by this appeal is whether the following

instrument authorized Horton Bros. Co., Inc., a real-estate broker, to execute a contract of sale in behalf of Mrs. Adville M. Todd:

"Agreement

"Date *6/12/58*

"I hereby authorize Horton Bros. Co., Inc., Anderson, S. C. to sell for me the below described property of which I am owner, making them my sole agent for that purpose, and in case sale of said property is made by them or by anyone else, I do hereby contract and agree to pay them 5 Per Cent Commission on *$60,000.00* or price accepted for said property, and to give good and sufficient title to same.

"*Lot fronting 181 ft. on N/side E. Earle St. and extending to E. Orr St. fronting on said street 164.7 feet including garage.*

"This contract to hold from *June 12, 1958* to *Oct. 12th 1958*.

"*Adville M. Todd* Seal.
"*401 E. Highland Ave.* Address."

(The foregoing agreement was on a printed form used by Horton Bros. We have italicized that portion written in ink.)

This action was brought by W. E. Gallant to compel Mrs. Adville M. Todd to specifically perform a written contract of sale made by Horton Bros. with plaintiff pursuant to the above agreement. It was alleged in the complaint that "after conferences" with Mrs. Todd, "in which she confirmed the price for which she was willing to sell the premises as being $60,000.00", the president of Horton Bros. entered into a contract for the sale of the property to plaintiff for $60,000.00, $3,000.00 of which was paid to Horton Bros. at the time of the execution of the contract with the balance of $57,000.00 payable upon tender of deed conveying fee simple title with general warranty. Plaintiff further alleged that he was ready, able and willing to buy the property but Mrs. Todd had refused to comply with her con-

tract. Joined as codefendants were W. P. Bowie and Mrs. Lucia P. Bowie who plaintiff alleged claimed some interest in the property on account of a certain mortgage and deed.

Defendants demurred to the complaint upon the ground that it stated no cause of action in that it showed that Horton Bros. was without authority to bind Mrs. Todd by a contract of sale. The Court below sustained the demurrer and dismissed the complaint, holding that the instrument which we have quoted only empowered the broker to find a purchaser acceptable to Mrs. Todd. From this order, plaintiff has appealed.

It is well settled that a real estate broker, under the ordinary contract of employment, has no implied authority to execute a contract of sale in behalf of his principal. *Bolen v. Smith,* 223 S. C. 39, 74 S. E. (2d) 42; 12 C. J. S., Broker, § 20; 2 Am. Jur., Agency, Section 137; 8 Am. Jur., Brokers, Section 61. He is generally a special agent, with limited powers, whose usual duty is simply to find a purchaser ready, able and willing to enter into a contract upon the terms and conditions fixed by the owner. *Shillinglaw v. Sims,* 86 S. C. 76, 67 S. E. 906. It has been suggested that the limitation upon the authority of a broker which the law imposes respecting making of contracts of sale lies in practical reasons and the inherent relationship of the parties. *Halsey v. Monteiro,* 92 Va. 581, 24 S. E. 258. The Court there said: "A sale of real estate involves the adjustment of many matters besides fixing the price * * * all of which require conference and time for their completion. They are for the determination of the owner, and do not pertain to the duties, and are not within the authority, of a real-estate agent. For obvious reasons, therefore, the law wisely withholds from him any implied authority to sign a contract of sale in behalf of his principal." In *Edwards v. Coleman,* 139 S. C. 369, 138 S. E. 42, 44, we stated that "it would be a dangerous doctrine if one merely authorized to find a purchaser for property at a fixed price could, without further negotiations with the owner, enter

into a contract for the sale thereof that would be binding upon the owner."

Of course, a real estate agent may be clothed with authority to enter into a contract of sale binding on the owner. *Wharton v. Tolbert*, 84 S. C. 197, 65 S. E. 1056. But such authority must be expressly conferred upon the agent or necessarily implied from the terms of the particular contract. "Words used for the purpose of giving a broker power to execute the contract of sale should be distinct in their meaning and import and should, with the requisite degree of certainty, manifest the intention of the principal to do something more than merely to employ a broker." 8 Am. Jur., Brokers, Section 61, page 1018.

Difficulty has frequently been encountered in determining whether under a particular contract the broker was authorized merely to find a purchaser or to go further and actually effect a binding contract of sale. This is illustrated by the numerous cases reviewed in annotations in 48 A. L. R. 634 and 43 A. L. R. (2d) 1014. The primary question is what the parties intended. In ascertaining the intention, due regard will be given to the language used in the contract and the pertinent circumstances.

Considering the agreement before us in the light of the foregoing principles, we think the Court below correctly held that Horton Bros. was not authorized to enter into a contract of sale binding on Mrs. Todd. The agreement is on a printed form used by this broker when property was listed with it for sale and obviously was drawn with the purpose of assuring its right to a commission in the event of a sale, during a specified period, whether made by Horton Bros. or "anyone else." As pointed out in *Bolen v. Smith, supra*, 223 S. C. 39, 74 S. E. (2d) 42, an agent may proceed under a brokerage contract so far as to entitle him to a commission and yet be without authority to consummate a contract of sale binding on the owner.

The agreement clearly contemplates that a sale might be made by Mrs. Todd or some broker other than Horton

Bros. This reservation by Mrs. Todd of the right to sell is only consistent with an intention to confine the authority of this broker to finding a purchaser. In discussing a similar reservation the Court in *D. N. Toohey & Co. v. Davis,* 85 N. H. 80, 153 A. 832, 835, said:

"Affirmative evidence of the want of any intention to bestow upon Toohey a right to bind the defendant by contract of sale is to be found in the fact that the agency agreement contemplated the retention in the defendant of a right to sell. What he could do by himself he could do by other agents. It is improbable that one would consciously lay himself open to several suits for breach of contract in case of approximately simultaneous sales by himself or different brokers. The retention of authority to sell in the principal is clearly evidence tending to show the improbability that the parties understood the agreement conferred authority upon the broker to bind the defendant by a sales contract."

It is further significant that this agreement does not undertake to definitely fix the price or terms of sale. It only states that the broker is to get a commission of 5% on "$60,000.00 or price accepted for said property." This rather indicates that further negotiations as to the price were contemplated. It is true that it is alleged in the complaint that subsequently Mrs. Todd confirmed the fact that she was willing to sell the premises for $60.000.00. But the mere statement of the price at which she was willing to sell cannot be construed as creating an agency with power to contract for the sale of the property. In the annotation in 43 A. L. R. (2d) heretofore mentioned, it is stated on page 1029: "The giving of a specified price by an owner of land to a realty broker whose services are sought to sell it, with or in addition to the limited authority inherent in the conventional owner-broker relationship, does not of itself enlarge that relationship into an agency empowering the broker to make a contract for the sale of the land, binding on his principal." In addition to the foregoing, neither in the agreement nor in the subsequent conversation alleged in the com-

plaint was there any effort to fix the terms of sale or to confer any authority on this broker to adjust many other matters usually incident to a sale of property.

It is strongly argued that the term "to sell" contained in the contract implies authority to enter into a contract for the sale of the property. As shown in the A. L. R. annotations heretofore mentioned, when used in contracts between real estate agents and owners of land, this term is generally given the restricted and conventional meaning of power to find a purchaser, and alone is not sufficient to empower a real estate agent to enter into a contract of sale. In Restatement, Agency, Section 53, it is stated that authorization "to sell" may be interpreted as meaning that the agent shall (1) find a purchaser to whom the principal may sell, (2) make a contract for sale, or (3) make a conveyance for the principal, but it is pointed out in Comment (a) that the phrase "to sell" is ambiguous and that the language used in connection therewith, the relations of the parties, the usages of the business, and other circumstances, determine what meaning is to be given these words. Comment (b) under this section is as follows:

"Unless the price and other terms have been completely stated by the principal, it is the normal inference that an agent employed 'to buy' or 'to sell' land and not given a formal power of attorney is authorized merely to find a seller or a purchaser with whom the principal is to conduct the final negotiations. This inference is strengthened if the agent is a broker who ordinarily merely solicits; even where the complete terms have been set out, it is ordinarily inferred that such a person is employed merely to find a customer. Authority to accept or to make a conveyance of land for the principal is found only if clearly expressed in the authorization or clearly indicated by the circumstances."

It has been held in some cases that a provision in a brokerage contract to the effect that the owner, for a stipulated price, will convey the property described to any purchaser procured by the broker is some evidence of an intention to

confer upon the broker the power to execute a contract of sale. It will be noted that the undertaking by Mrs. Todd in the agreement "to give good and sufficient title" to the property is not that explicit. Assuming, however, that it has the same effect, we think this clause when considered in connection with the other provisions heretofore discussed is insufficient to confer authority to make a contract of sale. In undertaking to ascertain the intention of the parties, all terms of the brokerage contract must be considered. No one provision must be disassociated from the others.

We do not think *Wharton v. Tolbert, supra,* 84 S. C. 197, 65 S. E. 1056, 1057, the case most strongly relied on by appellant, compels a reversal of the circuit decree. The owner there executed an agreement giving a broker, during a certain period, "the sole right and privilege of selling" certain real estate for $3,500.00 cash and agreeing in case of sale, to "execute and deliver to the purchaser or purchasers good and sufficient titles to said premises, free of encumbrances." While the brokerage agreement in that case is similar in many respects to the one now under consideration, there are several distinguishing features of an important nature. In the *Wharton case* the price and terms were definitely fixed. There was no retention by the owner of the right to sell or enter into a contract of sale. The agreement to convey good title to any purchaser procured by the broker at the price fixed was very explicit. Moreover, the agreement there was in the nature of an option for a certain period with the right of the broker to receive any excess over $3,500.00 at which the property was sold.

The holding in the *Tolbert case* has never been extended. About one year later it was held in *Shillinglaw v. Sims, supra,* 86 S. C. 76, 67 S. E. 906, 907, that an agreement authorizing a broker to "effect a sale" of property at a stipulated price and on certain fixed terms was insufficient to authorize him to execute a contract of sale.

Affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.