## CIRCUIT COURT OF NORTHUMBERLAND COUNTY

Wayne P. Plunkett and
Christopher P. Kelley

    v.

James E. Marsh,
Willingham Realty, Ltd.,
Charles A. Willingham, and
Howard O. Marsh, Jr.

October 11, 1989

Case No. (Chancery) 16-89

By JUDGE JOSEPH E. SPRUILL, JR.

The principle issue in this proceeding is whether a listing agreement signed by an owner granting to a real estate agent "the exclusive and irrevocable right to sell certain real estate" is an offer which can be transmitted by the agent to a third party for acceptance, thereby creating a binding contract which the owner is obligated to perform. We conclude that under the facts in this case, the listing agreement is not the equivalent of an offer.

On September 24, 1988, James E. Marsh (Owner) signed a Virginia Association of Realtors Exclusive Authorization to Sell standard form agreement, giving Willingham Realty, Ltd. (Agent) the exclusive right to sell seventy acres, more or less, in Northumberland County for $900,000.00.

Agent presented the listing agreement to (prospective) Buyers, Plunkett and Kelley, who are themselves real estate agents. By letter of March 16, 1989, to agent and owner, Plunkett referred to the September 24, 1988, agreement and undertakes to accept "said offer in accordance with all terms and conditions set forth therein." He referred

to a right of way of 3.219 acres, sets closing for not later than May 1, 1989, and encloses a $10,000 deposit. Neither of these matters was addressed in the listing agreement.

The Owner denied the existence of a binding contract. Plunkett and Kelley instituted this chancery action seeking specific performance. (Kelley did not sign the March 16 letter, nor does Plunkett purport to sign in his behalf. Because no issue has been made of Kelley's standing to sue, we will make none.)

Owner demurs and pleads the Statute of Frauds.

There are a number of other pleadings involving other parties and issues, but the central issue only will be considered in this Memorandum Opinion.

Plunkett places substantial reliance on *Lacey v. Cardwell*, 216 Va. 212 (1975), and *Ward v. Mattuschek*, 330 P.2d 971 (Mont. 1958). In *Lacey*, the owner signed an agreement authorizing his agent "to dispose of" their land. Agent was directed to conduct a public auction and was also authorized "to offer" the entire property for $250,000.00. Lacey accepted what our Supreme Court held was a valid offer from the owner, and the Court determined that a binding contract was created. The Court in *Lacey* placed emphasis on the owner's right to reject bids at the public auction but did not reserve such right regarding the private sale. The Court further placed significance on the fact that there was a delay of approximately one and a half months between acceptance of the offer by Lacey and its rejection by the owner during which negotiations continued. During this time the owner did not question the consideration or the suitability of the prospective buyer. In *Lacey*, the agent and the prospective buyer signed a contract which the Court determined was a valid acceptance of the owner's offer of sale.

The distinctions between *Lacey* and the case at hand are subtle. That case involved a public auction-private sale arrangement in which the agent was expressly authorized "to offer" the property privately. Significantly, the Court in *Lacey* held that the authority of the agent must be ascertained from the terms of the instrument itself.

In *Ward*, the owner appointed an agent "with the exclusive right to sell." The Montana Court held this was an offer to sell, the acceptance of which created

a binding contract. We note that the dissent in this case holds that the instrument was simply a thirty-day listing agreement, a term that does not appear in the majority opinion. The majority found that the material details of sale were included in the agreement/offer and that the agent was authorized to accept the deposit, all of which was sufficient to constitute a written offer of sale by owners.

This Court is of the opinion that although these cases are indeed persuasive authority for the plaintiff's position, they are not controlling in this case.

The threshold inquiry here must be whether what James Marsh signed was an offer to sell or an authorization for the agent to find a buyer. In this determination the intention of the owner is important. At this stage, we must look only to the four corners of the instrument in question in an effort to determine the objective intent of the owner as well as the limits of authority granted to the agent. If the instrument is an offer to sell, only an acceptance by a buyer is needed for a complete contract. This is the position Plunkett urges.

Terms normally critical to a transaction of this import are notably absent in the instrument, such as: closing date; amount of deposit; financing arrangements; date of possession; survey matters and accurate description of property being sold; allocation of closing costs; proration of taxes; reservation of rights to harvest growing crops, if any; and determination of access to property (which obviously is a problem). Except for price and agent's commissions, none of the essential details involved in a land sale transaction are addressed in the instrument in question. It seems illogical and unlikely that Marsh would intend that this instrument, lacking in such critical details, would be considered an offer ripe for acceptance.

The instrument establishes the price at $900,000 "payable in cash or for such other prices and such other terms and conditions as owner may subsequently authorize." This provision gives owner continuing authority to modify price or terms, a construction which is inconsistent with the contention that the instrument is an offer to sell. Paragraph 7 provides for "a valid contract of purchase executed by the owner and a purchaser." This indicates that the parties assumed a contract between owner and

purchaser would be executed. If the contract itself were the offer, the acceptance creates the contract and no further contract would be necessary. The inclusion of this provision indicates that the parties intended otherwise.

The agent himself here did nothing to bind his principal. He simply communicated the terms of the listing agreement. In this respect, this case differs from a number of cases cited by counsel. Here the prospective purchaser communicated his acceptance directly to the owner, as well as to the agent. This distinction is not insignificant. Presumably, the agent communicated the "offer" to other potential buyers. The owner himself had the right to sell without the assistance of agent. As noted in *Gallant v. Todd*, 111 S.E.2d 779 (S.C. 1960), it is improbable that the owner would consciously lay himself open to several suits for breach of contract in case of approximately simultaneous sales by himself and the agent. The practical conclusion must be that owner retained the authority to consummate the sale.

In *Gallant* the South Carolina Court states as follows:

It is strongly argued that the term "to sell" contained in the contract implies authority to enter into a contract for the sale of the property. As shown in the A.L.R. annotations heretofore mentioned (43 A.L.R.2d 1029), when used in contracts between real estate agents and owners of land, this term is generally given the restricted and conventional meaning of power to find a purchaser and alone is not sufficient to empower a real estate agent to enter into a contract of sale. In Restatement, Agency, Section 53, it is stated that authorization "to sell" may be interpreted as meaning that the agent shall (1) find a purchaser to whom the principal may sell, (2) make a contract for sale, or (3) make a conveyance for the principal, but it is pointed out in Comment (a) that the phrase "to sell" *is ambiguous and that the language used in connection therewith, the relations of the parties, the usages of the business, and other circumstances, determine*

*what meaning is to be given these words.* (Emphasis added) Comment (b) under this section is as follows:

"Unless the price and other terms have been completely stated by the principal, it is the normal inference that an agent employed 'to buy' or 'to sell' land and not given a formal power of attorney is authorized *merely to find a seller or a purchase with whom the principal is to conduct the final negotiations. This inference is strengthened if the agent is a broker who ordinarily merely solicits*; even where the complete terms have been set out, it is ordinarily inferred that such a person is employed merely to find a customer. Authority to accept or to make a conveyance of land for the principal is found only if clearly expressed in the authorization or clearly indicated by the circumstances." (Emphasis added.)

The absence of material terms in the instrument of September 24, 1988; the authority retained therein by owner to modify price and terms; the reference in paragraph 7 to a contract between owner and purchaser; and the customary usage of these standard form agreements in this negate, in the Court's opinion, any inference that owner intended it to serve as an offer to sell and support the conclusion that the instrument was simply an authorization for agent to find a buyer.

We conclude that the Bill of Complaint and the Amended Bill of Complaint are not sufficient, as a matter of law, to state a cause of action which would entitle plaintiffs to the relief requested. Accordingly, the Demurrer of James E. Marsh to plaintiff's Bill of Complaint will be sustained.