POLICH, APPELLANT, *v.* SEVERSON ET AL., RESPONDENTS.

(No. 5,265.)

(Submitted June 25, 1923.  Decided July 10, 1923.)

[216 Pac. 785.]

*Specific Performance — Vendor and Purchaser — Contracts — Conditions    Precedent — Nonfulfillment — Effect — Implied Findings.*

Specific Performance—Contracts—When Enforceable Contract not Created.
1. Where the owner of real property made termination of an outstanding lease by agreement with the lessee a condition precedent to his offer of sale becoming effective, and the lease was not so terminated, an acceptance of the offer otherwise did not mature into an enforceable contract.

Equity—Appeal—Implied Findings.
2. If a particular finding not made by the court in an equity case is necessary to support the judgment. it will be implied.

Contracts—How Created.
3. To constitute a contract the minds of the parties must have met upon the same thing at the same time, or, differently stated, a contract results from an offer by one party in form which may be accepted, and its unqualified acceptance by the other.

68 Mont.—15

*Appeal from District Court, Musselshell County; Geo. A. Horkan, Judge.*

ACTION by M. T. Polich against M. J. Severson and wife Judgment for defendants and plaintiff appeals. Affirmed.

Cause submitted on briefs of Counsel.

*Messrs. Jeffries & McNaught,* for Appellant.

*Messrs. Boarman & Boarman,* for Respondents.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This suit was instituted to enforce specific performance of a contract alleged to have been entered into between the plaintiff and defendant M. J. Severson, on March 8, 1920, by the terms of which Severson agreed to sell to plaintiff lot 17, block 27, in the original town site of Roundup, together with the two-story building thereon, and also some personal property used in the rooming-house which occupied the second floor of the building. The trial of the cause resulted in a judgment for defendants, and plaintiff appealed.

The only serious contention made is that the evidence does not support the trial court's finding and conclusion that the parties did not enter into any contract for the sale of the property. It is conceded that if a contract existed it is to be found written in correspondence between plaintiff, who resided in Roundup, and defendant M. J. Severson, who resided in Nelson, Wisconsin. That correspondence, however, is to be understood in the light of the surrounding circumstances developed at the trial.

Charles Dozios had occupied the first floor of the building [1] in question as a clothing store for many years. He had had a written lease, but the term of that lease had expired and he had held over upon the same terms. On January 26, 1920, Dozios and M. J. Severson met in St. Paul and negotiated

a new lease for three years, the terms of which were then agreed upon. Later a draft of the new lease was prepared by Severson's attorney in Roundup, signed by Dozios, and forwarded to Severson for his signature. Because of some controversy which arose over the use of the basement of the building, Severson did not sign the lease, but Dozios retained possession and paid rent according to the new agreement. Dozios testified, in effect, that it was his purpose to remove the stock of clothing and install a stock of furniture which he had ordered upon the strength of the negotiations at St. Paul; that during February he did remove the stock of clothing, but left the fixtures in the building and did not give up or intend to give up possession; but that after this action was commenced early in March he canceled the order for the stock of furniture. It developed further that about May, 1920, Dozios sublet the premises to one Hulstone. In the meantime the correspondence between plaintiff and Severson was being conducted.

On February 8 plaintiff wrote to Severson, asking for a lease on the first floor of the building, and concluding: "If you are not willing to lease but wish to sell the building I will consider an offer to buy the property." Severson answered on February 10 that he would not lease the property, as he had promised a lease to Dozios, and, if he sold, his price would be $12,000.

On February 12 plaintiff made an offer of $10,000 for the real property and the furniture used in the rooming-house on the second floor. On February 17 Severson replied: "Will take $10,500 for the property if I can make arrangements with Dozios about the lease." To this letter plaintiff replied on February 19: "I will take you up on your proposition; I will give you what you ask for your property, $10,500 cash. This includes furniture upstairs. I will close the deal with you at once subject to any lease that you may have with Dozios or upstairs at this time, but will not stand for a new lease."

It is conceded that the foregoing correspondence is immaterial except so far as it discloses the surroundings and gives color to what follows; that the parties had merely indulged in offers and counter offers without any acceptance by either of the offer of the other, and that plaintiff's purported acceptance contained in his letter of February 19 was ineffectual for any purpose.

On February 27 Severson wrote to plaintiff: "Will sell to you for $10,500 cash, that is if Dozios is willing to vacate my building. I am writing him to-day asking him to move out as soon as he can. Now if I can sell I will have deed made out here and furniture included in deed. * * * I cannot sell if Dozios is not willing to move out without trouble." On March 5 plaintiff wrote: "Answering your letter of February 27, wish to say that in my last letter writing to you I said that I will take your building subject to lease, so why you should worry about Dozios, whether he moves out or not. All you want is to get your money. I don't think you wish to sell that house very bad. Send your deed and abstract. Dozios has nothing to say regarding yours and my deal. I let him stay in the house if he wishes to stay and pay me rent."

It is not contended seriously that plaintiff and Severson had reached any agreement up to this time. Severson had never offered to sell subject to the Dozios lease, and plaintiff's letter of March 5 is nothing more than a reiteration of his previous offer to purchase subject to that lease. However, on March 9 plaintiff sent to Severson the following telegram: "Your letter of the twenty-seventh of February received, offering to sell me your lot seventeen in block twenty-seven original town site of Roundup with furniture included for ten thousand five hundred dollars. I accept your offer and have deposited with the First National Bank of Roundup the full sum of ten thousand five hundred dollars to be forwarded by said bank to you by draft on receipt from you of deed for the real property, bill of sale of the furniture and abstract of title. The bank

to forward to you the money without expense or charge to you. Dozios had vacated the property." On the same day the bank at Roundup notified Severson that plaintiff had deposited the money, which would be forwarded without expense to him upon receipt of a deed by the bank. On March 11 plaintiff wrote to Severson to the same effect and concluded: "Dozios has vacated the house and it is now vacant."

It is the contention of plaintiff that Severson's letter of February 27 contained a distinct offer to sell, which was accepted unqualifiedly by his telegram of March 9, and thereby an enforceable contract was concluded. Plaintiff assumes, however, that Severson's offer to sell was conditional solely upon Dozios removing from the building the stock of goods and other property which he then had in it and that he did vacate the premises. But neither the district court nor this court can be bound by the construction which plaintiff places upon the letter of February 27, nor by his interpretation of the evidence reflecting upon the question of Dozios' removal. Viewed in the light of the testimony given upon the trial, the correspondence in its entirety leaves no room for doubt that by the use of the term "vacate" or "move out" Severson meant more than merely the removal of the stock of clothing to make room for the stock of furniture. He used those terms interchangeably and according to the usually accepted meaning of the word "vacate"—to yield up possession. He meant such an arrangement agreeable to Dozios as would terminate the Dozios lease. In his letters Severson had referred repeatedly to that lease, and in his letter of March 5 plaintiff called attention to his own former statement: "I will take your building subject to the lease." On cross-examination plaintiff admitted that this reference was to the Dozios lease. In other words, plaintiff understood perfectly that the Dozios lease had to be terminated agreeably to Dozios or he would have to induce Severson to sell subject to that lease. We think the entire correspondence, viewed in the light of the surrounding circumstances developed at the trial, is not subject to any

other construction. Since Severson owned the property, he could offer it for sale upon such terms and subject to such conditions as he saw fit to impose. He chose to treat his agreement with Dozios as a lease and to make the termination of that lease by agreement with Dozios a condition precedent to his offer of sale becoming effective; and, since that lease was not terminated, the offer lapsed by its own terms.

It is immaterial that the Dozios lease was not in form to meet the requirements of the statute of frauds. Dozios was in possession under the lease agreement and Severson recognized it as a lease and accepted rent according to its terms.

There is no conflict in the evidence as to whether Dozios [2] vacated the building prior to March 9. The trial court did not make a specific finding upon the subject, but, if a finding that he did not vacate the premises were necessary to sustain the judgment, it would be implied. (*Crosby* v. *Robbins,* 56 Mont. 179, 182 Pac. 122.)

It is elementary that to constitute a contract the minds of [3] the parties must have met upon the same thing at the same time; or, stated differently, a contract results from an offer by one party in form which may be accepted, and its unqualified acceptance by the other. (*Glenn* v. *Birch & Sons Const. Co.,* 52 Mont. 414, 158 Pac. 834; *Koerner* v. *Northern Pac. Ry. Co.,* 56 Mont. 511, 186 Pac. 337.) "Where an agreement is made subject to the consent of a third party it must be looked upon as a conditional agreement dependent on such consent being given within a reasonable time, in default of which the agreement must be taken not to have become effective." (13 C. J. 283.) In principle, that rule applies here; for it is manifest that Severson intended, and plaintiff so understood, that the offer to sell was subject to an amicable adjustment with Dozios which would have the effect of terminating the Dozios lease, and, since that lease was not terminated, the telegram sent by plaintiff on March 9 could not have the effect of concluding a contract. The minds of the

parties never met upon the same thing at the same time, and neither of them ever became bound.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Cooper, Galen and Stark concur.