[Civil No. 2181.   Filed February 17, 1925.]

[233 Pac. 590.]

## MIDLAND LINSEED PRODUCTS COMPANY, a Corporation, Appellant, v. PALACE HARDWARE AND ARMS COMPANY, a Corporation, Appellee.

1. SALES—BURDEN TO SHOW SELLER'S BREACH JUSTIFYING BUYER'S REPUDIATION HELD ON BUYER.—Defendant buyer, who admitted the execution and subsequent repudiation of its contract with plaintiff seller, had the burden of showing a breach by plaintiff justifying the repudiation.

2. CONTRACTS — ORIGINAL TELEGRAMS HELD SUPERSEDED BY FORMAL CONTRACT THEREAFTER EXECUTED BY PARTIES.—Original telegrams, which in themselves were sufficient to constitute a contract between parties, held superseded by a formal contract which, though bearing the same date as the telegrams, was not finally executed until twelve days later.

3. SALES — BUYER'S TELEGRAM AND LETTER HELD NOT SUFFICIENT TO SHOW COMPLIANCE WITH TERMS OF CONTRACT REQUIRING NOTICE TO SELLER TO MAKE SHIPMENTS.—Buyer's telegram and letter held not sufficient to show compliance with terms of contract requiring notice to seller to make shipments of orders of goods previously purchased.

4. SALES—SELLER HELD NOT IN DEFAULT IN FILLING BUYER'S ORDER FOR OIL.—Under seller's contract providing that seller shall not be in default in absence of written notice and specifications from buyer so as to be received by seller by the first of the month for any

oil due and to be shipped during such month, a seller *held* not in default as to buyer's order received September 30th and filled October 26th.

See (1) 35 Cyc., p. 589.   (2) 13 C. J., p. 598.   (3) 35 Cyc., p. 166. (4) 35 Cyc., p. 166.

APPEAL from a judgment of the Superior Court of the County of Maricopa. O. J. Baughn, Judge. Judgment reversed and cause remanded.

Messrs. Townsend, Stockton & Drake, for Appellant.

Messrs. Zimmerman & Mulhern, for Appellee.

LOCKWOOD, J.—This is an action by Midland Linseed Products Company, a corporation hereinafter called the plaintiff, against Palace Hardware & Arms Company, a corporation, hereinafter called the defendant, for damages for the breach of a certain contract for the purchase and sale of thirty barrels of linseed oil. With a few exceptions, the facts are not greatly in dispute.

On December 3, 1919, defendant wired plaintiff's agents, Messrs. Willits, Patterson, & Green, hereinafter called the agents, at Los Angeles, California, as follows:

"Ship five barrels pale linseed oil first of each month April to Sept., at dollar seventy four *four* telegram December first."

—following it by mail with a written order:

"Original Purchase Order, Palace Hardware & Arms
Company.
"Phoenix, Arizona, 12/3/19.
"Ship to ourselves. Messrs. Willits, Patterson & Green, Los Angeles, Calif. Invoice to us only. Ship via Santa Fe freight. Terms:——

"Check.      Quantity.      Unit.      Article.              Price.

"Ship 5 barrels pale linseed oil first of each
   month, April to September, at .......$1.74 gal.
  "(Confirmation our wire of above date.)
"PALACE HARDWARE & ARMS COMPANY,
                    "By HARRY THOMPSON."

Immediately on receipt of the wire the agents answered it in the same manner as follows:

"Palace Hdwe and Arms Co   Phoenix Ariz
   "Have entered thirty barrels April Sept dollar
seventy four thanks.
              "WILLITS, PATTERSON & GREEN."

And on the same day wrote:

              "Willits, Patterson & Green.
              "Los Angeles, Calif., Dec. 3, 1919.
"Palace Hdw. & Arms, Phoenix, Arizona.
   "Gentlemen: We have just wired you confirming
your order of 30 barrels, and are inclosing herein
written confirmation, and we have already sent you
written confirmation of your previous order. . . .
   "We note in both your orders you request shipment of five barrels of oil the first of each month.
Now we would prefer very much that you give us
shipping instructions each time you want some oil
forwarded to you. The Midland contracts on future deliveries of oil, a copy of which will be forwarded for your signature in the near future, specify
about equal quantities monthly and also specify a
storage charge of 1c per gallon per month on oil
delinquent on contract. We will say for your information, however, that ordinarily we can allow
our customers to draw oil faster than the contract
specifies and we can also say that there will be no
storage charges unless the oil becomes considerably
past due. Under this arrangement you can place
your orders just as you need the oil. Should you
need 10 barrels in May and 10 in June and then go
two or three months on five, we could anticipate your

deliveries that much, unless we should be very short on oil, which we hardly think will be the case. . . ,

"Very truly yours,

"WILLITS, PATTERSON & GREEN,

"D. A. HOHN.·

"DAH/H."

On December 9th, the agents sent a written contract to cover the purchase, duly executed by plaintiff, to defendant, which was signed by the latter and returned to the agents December 15th. This contract reads as follows, so ·far as material to this case:

"Form 22.   8–22–19.   Original.              No. 2365.

"Midland Linseed Products Company Contract.

"Contract, made at Minneapolis, Minn., this 3d day of December, 1919, between Midland Linseed Products Company, of Minneapolis, Minn., hereinafter called the seller, and Palace Hardware & Arms Co., of Phoenix, Ariz., hereinafter called the buyer.

"The seller hereby sells and agrees to deliver, and the buyer hereby purchases and agrees to receive, 30 barrels, containing about 50 gallons each (7½ pounds in a gallon) of pure linseed oil, for shipment in quantities as follows:

| | | |
|---|---|---|
| ——— | bbls. | January |
| ——— | " | February |
| ——— | " | March |
| ——— | " | April |
| ——— | " | May |
| ——— | " | June |
| ——— | " | July |
| ——— | " | August |
| ——— | " | September |
| ——— | " | October |
| ——— | " | November |
| ——— | " | December |

"For delivery from seller's warehouse in about equal quantities per month April to September, 1920, inclusive. Raw linseed oil at $1.74 cents per gallon, f. o. b. shipping station, freight allowed to Los Angeles, Calif., special oils at seller's usual difference.

"This sale is made on basis of present freight rates. Any increase for account of buyer.

"Buyer to furnish specifications for shipment in writing, to seller's office at Minneapolis, Minn., in ample time to enable the seller to execute order within the period or periods above mentioned. The seller shall, under no circumstances, be in default hereunder in the absence of the giving of such written notice and specifications so as to be received by the seller, at its Minneapolis office by the first of the month for any oil due and to be shipped during said month.

"In the absence of such specifications, a carrying charge is to accrue of 1 cent per gallon per month, or any part of a month, so long as seller shall be willing to carry same.

"Failure to deliver any installment of Linseed Oil shall not be a breach thereof as to other installments. . . .

"The whole contract is stated herein.

"MIDLAND LINSEED PRODUCTS COMPANY,
"By C. C. BISBEE,
"Vice-President."
"PALACE HARDWARE & ARMS COMPANY,
"By HARRY THOMPSON, President."

On May 25, July 9, and September 30, 1920, defendant sent the following written orders to plaintiff's agent:

"Palace Hardware & Arms Company.
"Phoenix, Arizona, May 25, 1920.
"Messrs. Willits, Patterson & Green,
"Los Angeles, Calif.
"Ship to ourselves. Invoice to us only. Ship via Santa Fé freight. Terms: ——

| "Check. | Quantity. | Unit. | Article. | Price. |
|---|---|---|---|---|
| | 4 | bbls. | boiled linseed oil | |
| | 2 | " | raw " " | |

"Palace Hardware & Arms Company.
　　　　　"Phoenix, Arizona, July 3, 1920.
"Messrs. Willits, Patterson & Green,
　　"Los Angeles, Calif.
　　"Invoice to us only.  Ship via Santa Fé freight.
Terms. ——

"Check.  Quantity.　　　Unit.　　Article.　　　　　Price.
　　　5　　　　bbls boiled linseed oil

　　　"Palace Hardware & Arms Company.
　　　　　　　　"Phoenix, Arizona, 9/30/20.
"Messrs. Willits, Patterson & Green,
　　"Los Angeles, Calif.
　　"Ship to ourselves.  Invoice to us only.  Ship via
Santa Fé freight.  Terms. ——.

"Check.  Quantity.　　　Unit.　　Article.　　　　　Price.
　　　3　　　　bbls. boiled linseed oil
　　　2　　　　 "　 raw　　"　　　"

On February 26, 1921, defendant sent the following
letter to plaintiff:

　　　"Palace Hardware & Arms Co.
　　　　　"Phoenix, Ariz., February 26, 1921.
"Messrs. Willits & Green,
　　"821–23 Traction Ave., Los Angeles, Calif.
　　"Gentlemen: Replying to your favor of February
7th, we note what you have to say with reference
to the Midland Linseed Products Company, and
would advise that at this time we are not in posi-
tion to accept any further shipments of linseed oil,
as there is no market for this commodity at the
present time, and we are also not in position to pay
for same.
　　"Had you lived up to our instructions, as per our
telegram dated December 3, 1919, to ship us five
barrels of Pale Linseed Oil the first of each month
from April to September this contract would have
been completed, but you did not do so, and at times
when you were not in position to ship we had to
buy elsewhere.

"We do not feel that we are obligated to meet this contract, and as far as we are concerned the contract is canceled.

"Yours very truly,

"PALACE HARDWARE & ARMS COMPANY.

"HARRY THOMPSON, President."

"HT:N."

And, after some correspondence, this suit was filed.

It is apparent from an examination of the record that the vital questions in the case are whether or not the telegram and letter of December 3, 1919, sent by defendant, was a sufficient compliance with the following provision of the contract:

"Buyer to furnish specifications for shipment in writing, to seller's office at Minneapolis, Minn., in ample time to enable the seller to execute order within the period or periods above mentioned. The seller shall, under no circumstances, be in default hereunder in the absence of the giving of such written notice and specifications so as to be received by the seller, at its Minneapolis office by the first of the month for any oil due and to be shipped during said month,"

—and whether a shipment on October 26, 1920, made in response to the order of September 30, 1920, was a failure to comply with its terms, so as to entitle defendant to claim a breach of contract for failure to deliver.

The contract itself, and its repudiation on February 26, 1921, having been admitted by defendant, the burden of showing such breach by plaintiff as would justify the repudiation was on defendant. The two telegrams exchanged as of December 3d, were of themselves, of course, sufficient to constitute a contract, and, had there been nothing further, the position of defendant that the deliveries were agreed to be at the rate of five barrels per month, April to

September, 1920, would have been well taken. It appears, however, that after those telegrams the agents forwarded a written contract, which was executed by defendant and returned December 15th. In view of the letter from the agents of December 3d, it is apparent to us that the written contract, as tendered and finally made, contemplated special notice from defendants as to when they wanted delivery in the place of regular deliveries of five barrels per month, and this is borne out by the actual practice of the parties, as shown by the three orders in evidence.

The trial court correctly took this view, for it excluded the telegrams of December 3d on the ground that they were superseded by the contract which, though dated December 3d, was not finally executed by defendants and mailed until December 15th.

The duty was imposed by this contract on the buyer to give written specifications for delivery to the seller, and this burden was not sustained by the telegram and letter of December 3d from the defendant to the agents. Neither was plaintiff in default on the order of September 30th, which was filled before the end of the month of October. The failure of the plaintiff to comply with the telegram of December 3d, and to ship the oil ordered September 30th until October 26th, was not a default, and does not justify a repudiation of the contract by defendant.

Outside of these two alleged breaches there is no substantial evidence of any failure on the part of the plaintiff to live up to its contract. Since the burden of showing some breach of the contract on the part of the plaintiff rested upon the defendant, in order that it should sustain its defense of the action, the verdict and judgment are not supported by the evidence, and cannot stand.

The judgment is reversed and the case remanded to the superior court of Maricopa county for proceedings not inconsistent with this opinion.

McALISTER, C. J., and ROSS, J., concur.