HANDLOS and another, Respondents, v. MISSMAN, Appellant.

*June 2—June 26, 1959.*

For the appellant there was a brief and oral argument by *Robert D. Martinson* of Eagle River.

For the respondents there was a brief by *Robert C. Altman* of Wausau, for Henry J. Phillips, and *Edmund H. Drager* of Eagle River, for J. F. Handlos, and oral argument by *Mr. Altman*.

HALLOWS, J. We agree there was no sale to Handlos and he is not entitled to specific performance. However, the exchange of correspondence between the parties did not amplify the authority of the agent Handlos to commit the defendants to the sale of the property.

On July 19, 1954, the defendants, who lived in Iowa, entered into a listing agreement employing Handlos to offer for sale lake property in Vilas county for $8,500 with a 10 per cent commission. On October 26, 1954, a similar contract was entered into reducing the purchase price to $6,000 and the commission to five per cent. A buyer was not obtained and, although the defendants were reluctant to reduce the sale price, they wrote the agent on November 18, 1954, they would let the property go at that time for $5,000 cash, with no strings attached for commission, taxes, and transfer of title. On May 15, 1955, the following spring, the agent wrote that while the defendants had indicated they would accept $5,000 with no strings attached, he had been indicating a $7,000 price and hoped to find a buyer. On May 24th the agent again wrote inclosing a blank form of warranty deed with instructions for its execution, and stating he would follow through on the price indicated by the defendants and

only hoped it would be greater so as not to disappoint them. The deed was not executed. The defendants on May 28th wrote the agent in effect that they would not reduce their price of $5,000 with nothing deducted, and when the First National Bank in their town received the above amount they would forward all the papers.

On July 9th the agent wrote that he believed he had sold the property to a Mr. Whirinkel of Milwaukee, and requested the abstract be sent to him. Handlos stated that he could have done a lot better if some improvements he had previously suggested had been made. He inclosed a copy of an offer of purchase which was being mailed to Whirinkel. This offer of purchase, dated July 8, 1955, described the defendants as the sellers, the property, the purchase price of $5,000, and a commission of $500, and provided that the broker had fifteen days to get the owners' written acceptance. The buyer's name does not appear.

The defendants answered they were undecided and the price was not what it should be. On July 12th the agent wrote the defendants he had received a long-distance call from Mr. Whirinkel advising him that he could look forward to receiving the purchase price and he had sent the defendants' bank his personal check for $100 and asked it to send the deed to the First National Bank in Eagle River. The agent asked that the buyer's name in the deed be left blank as he thought Mr. Whirinkel would want the ownership in joint tenancy. He also suggested the consideration be stated as $1 and other considerations for tax purposes and he would attach the revenue stamps, but these would be no indication of the price as long as they were not under the required amount.

When Handlos sent the $100 check to the bank and advised the defendants to prepare the deed he did not know whether the buyer was going to be the plaintiff Phillips or Whirinkel. He sent the $100 after Phillips telephoned him

he would mail a check, which Handlos received some two days later in the amount of $6,000.

The agent was playing two prospective buyers against each other. However, he did not disclose to the defendants he had received $6,000 from Phillips for the property. Under this state of affairs the $100 check was accepted and the abstract sent by the defendants. They trusted that the agent had acted in good faith and had given them the best possible deal. Five days later the defendants refused to go through with the sale.

The evidence shows that the defendants were willing to sell the property for $5,000 net, but no reasonable inference can be drawn that the agent was authorized to bind the defendants to a sale. This was so understood by Handlos as late as July 9th, when he requested the abstract and wrote that Mr. Whirinkel was going to buy the property and inclosed a copy of the offer of purchase for that purpose. The subsequent acts of the defendants must be considered in the light of the possible offer to purchase by Whirinkel. They cannot be charged with knowledge unknown to them that Handlos accepted $6,000 from Phillips and now purports to have sold the property to him.

The reduction of the purchase price to $5,000 net to the defendants did not constitute authorization to the agent to bind the defendants on those terms or relieve him from submitting offers of purchase to the defendants at that price or in excess thereof, or to keep for himself all of the purchase price in excess of $5,000. One must not be confused between the purpose to contract at a given price and the authority to sign. This is not to say that an owner cannot enter into a contract with a real-estate agent whereby the agent could keep for his services everything in excess of a stipulated amount, but the mere terms fixing such compensation for an agent's services do not imply authorization to the agent

to bind the principal to any buyer selected or found by the agent.

An owner may contract with a real-estate agent whereby the agent is authorized to make a written contract of the sale which would bind his principal. *Brown v. Griswold* (1901), 109 Wis. 275, 85 N. W. 363. But the normal listing contract or a contract of employment of a broker to sell real estate does not confer upon the agent authority to bind his principal by a contract for sale. *Grinde v. Chipman* (1921), 175 Wis. 376, 185 N. W. 288.

Assuming the correctness of the finding of the trial court that the agent had the power to commit the defendants to a sale of the property, we cannot agree there is a sufficient memorandum to satisfy the statute of frauds. Sec. 240.08, Stats., 28 W. S. A., p. 23, provides:

"Every contract for the leasing for a longer period than one year or for the sale of any lands or any interest in lands shall be void unless the contract or some note or memorandum thereof, expressing the consideration, be in writing and be subscribed by the party by whom the lease or sale is to be made or by his lawfully authorized agent."

The question is not whether there is a written contract for the sale, because there is none, or whether the authority of the agent to make a sale is in writing, but whether there is a sufficient written memorandum which proves or tends to prove the existence of the oral contract for sale of this property. The memorandum is required not to make a contract but to evidence in writing a contract which has been made.

Handlos testified he sold the property to Phillips for $6,000, which was paid. This oral contract is void unless there is a sufficient memorandum thereof. Sec. 240.08, Stats., 28 W. S. A., p. 23. A memorandum must contain all the essential terms of the contract. One of these essentials is the identity or description of the parties and their relation,

who the seller is and who the buyer is. *Harney v. Burhans* (1895), 91 Wis. 348, 64 N. W. 1031; 1 Williston, Sales (rev. ed.), pp. 253, 292, secs. 102, 105a. Each party to a contract either by his own name or by such description as will serve to identify him or by the name or description of his agent is a requisite to the memorandum. Restatement, 1 Contracts, p. 278, sec. 207; *Irvmor Corp. v. Rodewald* (1930), 253 N. Y. 472, 171 N. E. 747. See Anno. 70 A. L. R. 196.

The memorandum need not be a single document. It may be several documents if they are internally connected by appropriate references. Restatement, 1 Contracts, p. 283, sec. 208; *Kovarik v. Vesely* (1958), 3 Wis. (2d) 573, 89 N. W. (2d) 279; *Kelly v. Sullivan* (1947), 252 Wis. 52, 30 N. W. (2d) 209; *Kenner v. Edwards Realty & Finance Co.* (1931), 204 Wis. 575, 236 N. W. 597. Although there is a split of authority, the prevailing rule seems to be that correspondence between a party to a contract and his agent relating to a contract which was previously made may constitute a memorandum or part thereof sufficient to satisfy the statute of frauds, even though such writings are not delivered to the other party. 49 Am. Jur., Statute of Frauds, pp. 646, 692, secs. 334, 390.

Nowhere in the correspondence between the defendants and the agent does Phillips' name appear as the buyer or, for that matter, the purchase price of $6,000. Oral proof cannot be used to supply this defect in the memorandum. *Thiel v. Jahns* (1947), 252 Wis. 27, 30 N. W. (2d) 189. The case of *Singleton v. Hill* (1895), 91 Wis. 51, 64 N. W. 588, is not in point. There the agent's letter set forth the purchaser's offer of purchase in its essential details and the letter of the seller accepted the offer. But here the agent never disclosed to the defendants that Phillips was the purchaser, or the purchase price.

The applicable rule to this case is stated in 49 Am. Jur., Statute of Frauds, p. 708, sec. 404:

"Although the authority of the agent to enter into a contract for his principal such as a contract to buy or sell land is in writing and signed by the principal, this itself is not a sufficient memorandum of the subsequent agreement entered into by the agent, but there must be an additional memorandum of such agreement." (Citing cases.)

This is on the theory that such authority, where no purchaser is named, is not a written offer to sell which becomes binding on the seller when accepted by the purchaser. The communications between the defendants and the agent Handlos do not constitute a part of the contract of sale; they are merely explanatory of what was done by the agent and Phillips and cannot be resorted to in order to supply (which they do not) essential omissions from the contract or memorandum thereof. 49 Am. Jur., Statute of Frauds, p. 702, sec. 396.

*By the Court.*—The judgment appealed from is reversed with directions to dismiss the complaints of both plaintiffs. No costs are allowed the appellant because of the late filing of her brief.

MARTIN, C. J., took no part.