356 P.2d 643

**Irving L. DIAMOND, dba Diamond Realty, Appellant,**

v.

**Kenneth G. HAYDIS and Patricia A. Haydis, his wife, and Karl Mangum, Appellees.**

No. 6582.

Supreme Court of Arizona.

Oct. 26, 1960.

John H. Grace, Flagstaff, for appellant.

Mangum & Christensen, Flagstaff, for appellees.

PHELPS, Justice.

This is an appeal from a judgment in favor of defendants in an action for commission claimed by plaintiff-appellant, a real estate broker, from defendants-appellees for alleged sale of real and personal property listed with him by the defendants-appellees, and from the order denying plaintiff's-appellant's motion to set aside the judgment or in the alternative the granting of a new trial. The parties will hereinafter be designated as plaintiff and defendants as they appeared in the trial court.

The facts are that on May 22, 1955, Kenneth G. Haydis, one of the defendants, acting for and on behalf of the community, executed a written listing contract with Diamond Realty authorizing the latter to sell as a real estate agent "Ken's Cork N' Bottle," a liquor store located at 636 East Santa Fe Avenue, Flagstaff, Arizona, for the price of $30,000 cash, plus approximately $2,500 inventory. The purchase price was to include the No. 9 liquor license, the fixtures and equipment, and the assignment of the lease from the landlord to the new purchaser.

The listing agreement between Kenneth G. Haydis and the plaintiff provided in the part material here:

"In the event that you [plaintiff], or any other agent or group of agents cooperating with you, shall find a buyer ready and willing to enter into a deal for said price and terms, or such other terms and price as I [defendant] may accept, or in the event of any sale, exchange, assignment or

transfer of said business, lease, (or leases, if any) and personal property, or any substantial part thereof, while your employment remains exclusive or that during your employment, whether on an exclusive, or non-exclusive basis, you place me in contact with a buyer to whom at any time within 90 days after the termination of said employment I may sell, assign or transfer said personal property, or any substantial part thereof, I hereby agree to pay you in cash for your services a commission equal to ten (10) per cent of the selling price."

No purchaser was provided by the plaintiff who was ready, willing and able to enter into a transaction for the purchase of the said property on the terms set forth in the listing contract. On July 27, 1955, the plaintiff presented two purchasers, namely, Charles H. Gilleland and Dorcas L. Waterman, to purchase the liquor business upon terms which varied from the listing contract and which were set forth in the instrument known as "Purchase Contract and Receipt" which is a document in the form of the usual real estate broker's agreement signed by him and by the seller and the purchaser. This written agreement provided for the sale of the liquor business to the purchasers for the total sum of $35,000 to be paid as follows: $1,000 immediately as earnest money, $16,500 on completion of the transfer of the

No. 9 liquor license, and $18,000 to be evidenced by a note and chattel mortgage payable in installments over a period of 31 months.

The selling price included approximately $2,500 inventory. The purchase price was to be adjusted at the time of close of escrow in accordance with the actual inventory. The acceptance of this "Purchase Contract and Receipt" was by its terms conditioned upon and subject to the following:

"This acceptance is conditioned upon and *subject to* an agreement to be executed by the seller and Sam Gallant & Co. whereby Sam Gallant & Co. agree to purchase from the seller the [$18,000.00] promissory note secured by the chattel mortgage and the restrictions on the license for the sum of $15,000.00, which said note, chattel mortgage and restrictions in favor of the seller said seller agrees to transfer, sell, assign and convey to said Sam Gallant & Co. for the amount indicated above." (Emphasis ours.)

It should be noted that the acceptance was not only made conditional but also expressly made subject to an agreement to be executed between the seller and a third party who was not a party to this sales contract. This agreement was signed by the purchasers, the sellers and the plaintiff. On July 28, 1955, the "Purchase

·Contract and Receipt" was amended. This amendment in its material part provided:

"* * * all endorsements and assignments made by Seller to Sam Gallant & Co. shall be without recourse on Seller and the purchase of Seller's interest by Sam Gallant and Co. shall be made upon close of escrow.

*· * * * * *

"This agreement is subject to seller's approval of the escrow arrangement."

The agreement as amended was signed by the purchasers and the sellers, and at the time the amendment was signed both Mr. Schwenke, representing the plaintiff, and Sam Gallant were present and then knew of the seller's requirement that the endorsement of the $18,000 note was to be without recourse.

Further evidence of Sam Gallant's knowledge of the conditions for the purchase of the $18,000 note is noted from his following testimony:

"Q. Did you, during 1955, have occasion to come to Flagstaff, Arizona? A. Yes, I did.

"Q. When, if you recall, approximately? A. On or before July the 28th.

* * * * * *

"Q. * * * What was the purpose, if any, of going to see Mr. Haydis? A. I went there for the purpose of looking at his place of business, and to get permission to examine his financial records, for the purpose of determining whether or not I would like to finance a proposed purchase of that business."

It is apparent from this testimony that at the time the amendment to the Purchase Contract and Receipt was attached, Mr. Gallant was in Flagstaff to determine whether or not he would purchase the note and therefore knew of the condition under which the note was to be sold and the terms to which it was subject. It should be noted here that Mr. Schwenke, the agent of the plaintiff, was present with Sam Gallant during this time and that no written agreement or offer was executed concerning the $18,000 note.

The seller throughout insisted that the purchase of his business was to be in cash. Cash were the terms of the listing agreement and of the acceptance of the offer of the purchasers. This was the reason that the defendants wanted the endorsement of the note to state it was without recourse. If it were otherwise, i. e., an endorsement without qualification, the seller would be liable for the amount of the note if same were dishonored and the necessary dishonor proceedings were duly taken. A.R. S. § 44–466, subd. B.

A.R.S. § 44–438 provides that:

"A qualified endorsement constitutes the endorser a mere assignor of the

title to the instrument. It may be made by adding to the endorser's signature the words 'without recourse' or any words of similar import. Such an endorsement does not impair the negotiable character of the instrument."

It will be observed that defendant did not agree to endorse the purchasers note for $18,000 to Sam Gallant and Co. in his acceptance of the counter offer made by the prospective purchasers Charles G. Gilleland and Dorcas L. Waterman. He agreed to "transfer, sell, assign and convey to Sam Gallant and Co., the note, chattel mortgage and restrictions in favor of the seller."

California in Title Ins. & Trust Co. v. Bandini Estate Co., 26 Cal.App.2d 157, 79 P.2d 141, 143, where the respondent *"agreed to assign, transfer, and set over unto appellant or its nominee all of the 'right, title and interest in and to said notes and in and to the said trust deed securing the same,'"* (Emphasis ours.) constituted a qualified endorsement, making the endorser a mere assignor of the title to the instruments. Citing cases. The court took notice of the fact that respondent sold the notes to the appellant at a discount. The court observed that:

"* * * It must be borne in mind * * * that prior to the transfer of the notes in question from respondent to appellant the former had been asked to consent to an extension of time for payment and refused such request. In the face of such refusal, coupled with the transfer of the notes to appellant at a discount, it hardly seems reasonable to infer, from the course of business, that such transfer would be made coupled with an assumption of an obligation to make payment of the notes in full in case the maker failed to do so."

This is almost identical with the instant case. See Hammond Lumber Co. v. Kearsley, 36 Cal.App. 431, 172 P. 404; Kern v. Henry, 138 Cal.App. 46, 31 P.2d 454.

There is a diversity of views on this subject under different facts. Prichard v. Strike, 66 Utah 394, 243 P. 114, 44 A.L.R. 1348, states there is irreconcilable conflict in the decisions but the court accepts the version of 1 Daniel Negotiable Instrument 6th Ed. Sec. 688c rather than basing it upon a majority rule. The facts of the Utah case are very different from the instant case. In that case there was no discount in the note as here nor a refusal to extend the time for payment as in the California case of Title Ins. & Trust Co. v. Bandini Estate Co., supra.

We therefore hold that the amendment to the Purchase Contract and Receipt which added the requirement of endorsement without recourse was unnecessary in that the original condition concerning the $18,-000 note to which the acceptance was made

"subject to" was in itself a qualified endorsement, as we believe we have above shown.

In further support of the above proposition the plaintiff thereafter with the approval of the purchasers, employed Mark Leibsohn, an attorney, who drew up the escrow agreement. This agreement was drawn up by Mark Leibsohn pursuant to the Purchase Contract and Receipt, as amended, which was furnished him by Mr. Schwenke who handled all the transactions between the defendants and the purchasers. Subsequently the escrow agreement was revised and on August 13, 1955, this information was telegraphed by the plaintiff to the defendants along with the notification that the escrow agent had been changed to H. Karl Mangum. This latter agreement was only signed by the purchasers. There is however, evidence of tacit approval of this agreement by the defendants. The uncontradicted testimony in the trial court was to the effect that after the August 13 telegram to the defendants, H. Karl Mangum notified defendants' attorneys that he had the escrow agreement in his possession. Neither the defendants nor their attorneys made any objection concerning the agreement or the change in the escrow holder.

On September 1, 1955, Sam Gallant & Co. wrote a letter to H. K. Mangum, escrow holder, informing the latter of his intention to purchase the $18,000 note for $15,000 cash but did not state that the endorsement by the defendant should be without recourse. Instead, he stated that the endorsement "shall contain the usual customary terms. * * *" No agreement having been executed between Sam Gallant & Co. and the defendants and no new terms having been agreed upon between the purchasers and defendants, the defendants concluded that the purchasers did not intend to consummate the deal.

In the first four assignments of error it is the plaintiff's contention that his obligation under the listing contract was fulfilled when he produced the purchasers, Charles H. Gilleland and Dorcas L. Waterman, who were ready, willing and able to buy the premises and when the purchasers entered into the contract of sale with the defendants. The plaintiff cites as error the trial court's instructions to the jury that recovery for the commission could not be gotten unless the plaintiff proved that a binding contract had been entered into between the prospective purchasers and the sellers.

In determining the rights of a real estate broker to his commission, the established rule of law in this jurisdiction is that:

"* * * in the absence of a specific contract to the contrary, when a real estate broker has brought together the parties to a sale or exchange of real estate, and they have agreed fully

on the terms and entered into a binding contract for such sale or exchange, his duties are at an end and his commission is fully earned, and it is immaterial that the parties to the contract rescind mutually or that one or the other thereof defaults and the sale or exchange is not fully effected." Lockett v. Drake, 43 Ariz. 357, 31 P.2d 499, 500; Sligh v. Watson, 69 Ariz. 373, 214 P.2d 123.

■ It is also the law that if a real estate broker procures a purchaser ready, able and willing to purchase according to the terms of the listing agreement between the broker and the seller and the latter refuses to enter into a contract of sale with such purchaser, the broker is entitled to his commission. In such case the broker has fully performed that for which he was employed and cannot be frustrated by the breach of the listing agreement by the seller. However such is not the case here.

■ The principal question raised which is determinative of this case becomes: Is a broker entitled to a commission for the sale or exchange of real property if he procures a conditional purchaser ready, able and willing to buy only in the event of the happening of a condition which never occurs?

It was held in McFarland v. Heady, 123 Cal.App.2d Supp. 973, 267 P.2d 460, 461, that "where principals agreed to an exchange of properties only if a lease for a motel with certain terms should be granted by the owner of the land on which the motel was located, and the owner refused to grant the lease, no effective contract for the exchange of property ever came into being and the broker was not entitled to commission, notwithstanding he devoted considerable time to completing the transaction." The California court in this holding reaffirmed the California Supreme Court case of McAdoo v. Moore, 70 Cal. App. 408, 233 P. 391, 392, wherein it was held:

"While it is true, generally speaking, that a broker earns his commission when he produces a purchaser ready, able, and willing to purchase according to the terms upon which he was employed to sell, a different legal situation arises where a broker is employed to negotiate a sale, * * *, and negotiates a contract of conditional sale. He then is bound to show that the condition has occurred which converts the conditional sale into an actual sale—a binding contract between the parties."

■ By the terms of the Purchase Contract and Receipt, the sale was conditioned upon two events, namely, (1) the purchase of the $18,000 note for $15,000 cash by Sam Gallant & Co. with all endorsements made by seller to be qualified as shown above and (2) the seller's approval of the escrow ar-

rangement. Unless and until these conditions have been met there can be no binding contract and the plaintiff cannot recover his commission. Blaine v. Stinger, 79 Ariz. 376, 290 P.2d 732.

■ When an agreement is made subject to the consent or approval of a third party it must be viewed as a conditional agreement dependent upon such consent or approval · being given. If such consent or approval is not given then such agreement is not binding upon the parties. Polich v. Severson, 68 Mont. 225, 216 P. 785; McFarland v. Heady, supra. See also Section 11 Annotation 12 A.L.R.2d 1427.

The only evidence presented concerning the note purchase condition is a letter dated September 1, 1955, from Sam Gallant & Co. to Mr. H. K. Mangum, Escrow Holder, wherein it was stated that said letter was to confirm Sam Gallant & Co.'s offer to purchase the $18,000 note for $15,000 subject to several further conditions, one of which being that the endorsement was to contain the usual customary terms. No further negotiations were entered into from the date of the letter to the commencement of the suit in the trial court, and no agreement was executed between Sam Gallant & Co. and the defendants.

Since this condition was not met, no binding contract was ever consummated between the purchasers and the sellers. Therefore, the plaintiff is not entitled to recover his commission under the terms of the listing agreement with the defendants. Blaine v. Stinger, supra.

■ Plaintiff's fifth assignment of error wherein he claims surprise and denial of his right of impeachment when immediately after plaintiff rested his case defendants rested their case, is without merit and deserves no consideration. The plaintiff had ample opportunity to fully cross-examine the defendant Kenneth G. Haydis upon all pertinent issues when he called him as an adverse party. 16 A.R.S. Rules of Civil Procedure, rule 43(g). We have also considered the other points under the fifth assignment of error and find them to be without merit.

For the reasons stated the judgment of the superior court of Coconino county is in all respects affirmed.

STRUCKMEYER, C. J., and BERNSTEIN, UDALL, and LESHER, JJ., concurring.