446 P.2d 948

**Alfred MORGAN, Appellant,**

**v.**

**Lloyd W. GOLDER, III, and Helen T. Golder, husband and wife, Appellees.**

**No. 2 CA–CIV 563.**

Court of Appeals of Arizona.

Nov. 13, 1968.

Rehearing Denied Dec. 10, 1968.

Review Denied Jan. 28, 1969.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by D. Thompson Slutes, Tucson, for appellant.

Miller & Pitt, by David J. Leonard, Tucson, for appellees.

HATHAWAY, Chief Judge.

We are called upon in this appeal to determine whether a real estate broker's commission was earned. The cause was tried to the court below and judgment was entered denying the commission.

The defendants in the trial court, Lloyd W. Golder, III and his wife, owned a ranch which included a ranch house, deed-

ed ranch land, and state leased land. Golder listed the property for sale with the plaintiff sometime prior to October 19, 1965. In October, 1965, plaintiff showed the property to Mrs. Ann B. Ohrel. She became interested in buying the ranch. She negotiated with the Golders through plaintiff and the parties entered into an Agreement for Exchange of Real Property on or about December 29, 1965.

Under this agreement, Mrs. Ohrel was to receive the Rail 'N Ranch home, 50 acres of deeded land and assignment of the lease on 2,400 acres of state grazing land for the total consideration of $155,000, payable as follows: she was to assume the existing mortgage on the ranch in the approximate amount of $49,100; she was to transfer to the Golders her equity, valued at approximately $47,835 in a home; and she was to pay the balance, approximately $58,065, in cash. Plaintiff was to receive a commission of $8,650 from the Golders and a commission of $6,450 from Mrs. Ohrel.

The exchange never took place, because the State Land Department refused to approve the assignment of the lease on the state land, whereupon Mrs. Ohrel demanded the return of all documents and cash she had placed in escrow.

The agreement provided that should any party fail to perform or carry out his part of the agreement, then such party " * * * shall pay the aggregate of the real estate commissions due the agent herein from all parties herein." The Golders refused to pay any commission. The broker assigned the commission claimed, in whole, to the plaintiff who brought this suit against the Golders for the entire amount. He has appealed from the judgment against him.

Several questions are raised, but they boil down simply to one, Is the broker entitled to his commission under the contract and facts in the record? We believe that he is not and that the judgment should be affirmed.

■ Were the provisions concerning payment of the commission ambiguous, we would construe the agreement most strong-

ly against the party drafting it, the broker, Kingman Water Co. v. United States, 253 F.2d 588 (9th Cir. 1958). Such construction is unnecessary here, however, because the agreement is clear. In perusing the agreement for exchange of property, we find that the exchange was subject to:

" * * * marketable titles as evidenced by standard form Owner's Title Insurance Policies * * *.

\* \* \* \* \* \*

"In the event either title to said properties as herein agreed to be conveyed is found by Title Insurance Company to be unmarketable as shown above, at time of closing of this Agreement, then this Agreement shall become null and void."

The Golders, through no fault on their part, were unable to obtain approval from the State Land Department for transfer of the grazing lease. Consequently, the condition did not come to pass and the exchange agreement became null and void. Diamond v. Haydis, 88 Ariz. 326, 356 P.2d 643 (1960). The agreement concerning the broker's commission, having become integrated into the agreement for exchange of property, Midland Linseed Products Co. v. Palace Hardware & Arms Co., 27 Ariz. 363, 233 P. 590 (1925), became subject to the same conditions, American Fruit Growers, Inc. v. Hawkinson, 21 Tenn.App. 127, 106 S.W.2d 564 (1937).

We find no representations on behalf of the Golders that they are able to give marketable title, as in Bradley v. Westerfield, 1 Ariz.App. 319, 402 P.2d 577 (1965). Indeed, the entire transaction is "subject to" all parties' ability to convey marketable title.

■ A.R.S. § 37–286, subsec. B provides:

"A lessee of state lands not in default in rent, and who has kept and performed all the conditions of his lease, may, with the written consent of the department, assign the lease."

The parties, including the broker, are presumed to know the law of the State of Ar-

**440**

izona, and are therefore presumed to know that the consent of the State Land Department is a prerequisite to consummation of this exchange. Maricopa Laundry v. Levandoski, 40 Ariz. 91, 9 P.2d 1014 (1932). The statute, therefore, becomes an integral part of the agreement as a condition thereto. Friedman v. Le Noir, 73 Ariz. 333, 241 P.2d 779 (1952); Application of Hagood, 356 P.2d 135 (Wyo.1960).

Furthermore, we are of the opinion that an additional basis for our affirmance is established in the following language of our Supreme Court enunciated in Diamond v. Haydis, supra, wherein the court also dealing with a conditional contract, quoted from McAdoo v. Moore, 70 Cal.App. 408, 233 P. 391, 392 (1924), wherein in the California court stated:

"While it is true, generally speaking, that a broker earns his commission when he produces a purchaser ready, able and willing to purchase according to the terms upon which he was employed to sell, a different legal situation arises where a broker is employed to negotiate a sale * * * and negotiates a contract of conditional sale. He then is bound to show that the condition has occurred which converts the conditional sale into an actual sale—a binding contract between the parties."

88 Ariz. at 333, 233 P. at 392.

Our court cited, in that case, the California case of McFarland v. Heady, 123 Cal. App.2d Supp. 973, 267 P.2d 460 (1964). In that case, the California court said, at page 462, 267 P.2d:

"The situation is simply one in which the principals agreed to effect an exchange of properties, only if a lease, with certain terms, should be granted by the owner of the land on which the motel was located; the procurement of the lease proved impossible and, as the condition was not complied with, no effective contract for the exchange of the property ever came into being. The plaintiff undoubtedly devoted substantial time and money in his attempt to com-

plete the transaction, and he did all that he could to close the deal successfully. But, as the contract for the exchange was conditional and the condition did not occur, the broker is not entitled to any pay."

We feel that these cases state the law controlling the case at bar. See also Blaine v. Stinger, 79 Ariz. 376, 290 P.2d 732 (1955).

 For the foregoing reasons we conclude that the judgment should be affirmed. The appellees raised, as an additional basis for affirmance, the duty of the broker in connection with his draftmanship of the agreement to protect the parties from liability arising through innocent inability of performance. Having affirmed for the reasons already given we decline to discuss this latter point.

MOLLOY and KRUCKER, JJ., concur.