464 P.2d 977

**MANAGEMENT CLEARING, INC., an Arizona corporation, Appellant,**

v.

**James R. VANCE and Frances L. Vance, his wife, Appellees.**

**No. 1 CA–CIV 1126.**

Court of Appeals of Arizona, Division 1.

Feb. 9, 1970.

Rehearing Denied March 26, 1970.

Review Granted April 14, 1970.

Sheldon Mitchell and A. Alexander Katz, Phoenix, for appellant.

Perry & Smith, by Rálph G. Smith, Jr., Phoenix, for appellees.

HATHAWAY, Judge.

This appeal arose from the granting of a motion for summary judgment to the appellees Vance.

Mr. Vance entered into an exclusive listing agreement for three months with Management Clearing, Inc., on August 27, 1968. This agreement was not signed by Mr. Vance's wife, and the agreement concerned the sale of the Vances' community realty.[1] The brokers procured a prospective purchaser, a Mr. Ronald J. Walek, who signed a purchase contract and receipt on November 8, 1968. The terms of the purchase contract were identical to the terms in the listing agreement signed by Mr. Vance, except for one additional clause in the purchase contract which provided:

"4A. This offer is subject to an inspection and approval of the interiors."

The Vances refused to sign the purchase contract, and Management Clearing, Inc. commenced this suit to collect the brokerage commission.

The trial court in granting the Vances' motion for a summary judgment stated there were no material disputed issues of fact and that the listing agreement was null and void because the wife of Mr. Vance had not signed it.

We are first faced with the question of whether a husband can individually encumber or bind the community for payment of a real estate commission by signing a listing with a real estate broker.[2] This question has not expressly been considered before in Arizona, although it was raised in Lockwood v. Mattingly, 97 Ariz. 85, 397 P.2d 64 (1964) which was decided on other grounds.

A.R.S. § 33–452 states in part:

"A conveyance or incumbrance of community property is not valid unless executed and acknowledged by both husband and wife, * * *."

The State of Washington has considered this question in McGlauflin v. Merriam, 7 Wash. 111, 34 P. 561 (1893) and Geoghegan v. Dever, 30 Wash.2d 877, 194 P. 2d 397 (1948). The Washington courts held that a husband's contract with a real estate broker to sell community property was not binding on the wife or on the community. The reasoning of those cases is that since the husband alone does not have any authority to sell community real estate, neither may he authorize a real estate agent to sell the property.

As Arizona's community property law was patterned after that of Washington's, decisions of that state are generally accorded great weight. Cosper v. Valley Bank, 28 Ariz. 373, 237 P. 175 (1925). If the listing agreement between the parties in this case was one authorizing Management Clearing, Inc. *to sell* the community property, the contract would not be valid. A.R.S. § 33–452. A husband cannot authorize another to do what he himself has no authority to do. There is no statutory or implied agency on the part of the husband to sell community real property. Rundle v. Winters, 38 Ariz. 239, 298 P. 929 (1931).

We are in agreement with the Washington view that a husband cannot authorize another *to sell* community real property. However, we do not believe that the listing agreement entered into by the parties in this case purports to authorize the broker to sell the property.

A brokerage contract places only the duty on the broker of finding a pur-

1. The listing agreement states in part:
   "Please endeavor to sell our property described below at the following price and terms: * * *."

2. "It has been suggested that the community property system, as it developed in the civil law, was an advance over the common law system of marital rights;

but it is uncertain whether, in its present form in the eight community property states, it is to be preferred to the modern statutory system found in the other states. In any event, the community system has added its share of perplexities to the law." The Husband's Management of Community Real Property, 1 Ariz. L.Rev. 13 (1959).

chaser who is ready, willing and able to purchase upon the terms specified. It does not authorize the broker to sell the property except where such is expressly provided. Solana Land Co. v. National Realty Co., 77 Ariz. 18, 266 P.2d 739, 43 A.L.R.2d 1002 (1964). In the *Solana* case the listing agreement provided in part: " * * * you are hereby authorized to sell * * *." The court, after extensively citing from Landskroener v. Henning, 221 Mich. 558, 191 N.W. 943 (1923), held " * * * that the sales listing agreement herein set forth, properly construed does not confer upon Drachman the power to conclude an agreement for the sale of the property that would be binding upon the owner. The sales listing is nothing more than the employment of an agent to produce a purchaser, ready, willing, and able to buy the property upon the owner's terms." 77 Ariz. at 27, 266 P.2d at 745.

■■ The general rule is that a brokerage contract is a contract of employment for personal services. James v. Hiller, 85 Ariz. 40, 330 P.2d 999 (1958); Texas Reserve Life Insurance Co. v. Security Title Co. (Tex.Civ.App.), 352 S.W.2d 347 (1961). " * * * a party may contract with a broker to procure a suitable purchaser for property which he does not own and his subsequent failure to perfect a title which would enable him to complete a sale does not affect his liability to the broker." McDonald v. Bernard, 87 Cal.App. 717, 262 P. 430, 431 (1927), cited with approval in Diamond v. Chiate, 81 Ariz. 86, 300 P.2d 583 (1956). A broker has nothing to do with the title or ownership of the property and has a duty to only find a purchaser ready and willing to purchase the property on the terms specified. Martin v. Ede, 103 Cal. 157, 37 P. 199 (1894), also cited with approval in Diamond v. Chiate, supra.

■ We therefore hold that the listing agreement in this case did not authorize Management Clearing, Inc. to sell the community realty, but only authorized them to find a prospective purchaser. Solana Land

Co. v. National Realty Co., supra; Diamond v. Chiate, supra; Landskroener v. Henning, supra; McDonald v. Bernard, supra; Martin v. Ede, supra; Katz v. Anderson, 48 Ill.App.2d 406, 198 N.E.2d 715 (1964); Queen City Lumber Co. v. Fisher (N.D.), 111 N.W.2d 714 (1961); Heinrich v. Martin (N.D.), 134 N.W.2d 786 (1965); Gill v. American Security Corporation, D.C. App., 209 A.2d 629 (1965); Young v. Lasswell, 86 R.I. 287, 134 A.2d 170 (1957); Gallant v. Todd, 235 S.C. 428, 111 S.E.2d 779 (1960); and Handlos v. Missman, 7 Wis.2d 660, 97 N.W.2d 419 (1959). And see 12 C.J.S. Brokers § 20.

In the case of Johnson v. Allen, 108 Utah 148, 158 P.2d 134 (1945) the court was faced with this identical problem. The court stated:

"The contention that the contract was void because of the fact that the wife, who under Idaho community property law was a part owner of the land, did not sign the contract is based on a statute relating solely to transfers or contracts to transfer an interest in the land. This was a contract of employment and did not purport to convey an interest in land. The defendant, by this contract, employed the plaintiff to find a purchaser for certain lands. When plaintiff did the work he was entitled to the commission agreed upon whether the land was sold or not, or whether the defendant owned the land or not." 158 P.2d at 139.

■ Since the brokerage contract is a contract for personal services, and a debt incurred by a husband is presumed to be for the benefit of the community, Greer v. Goesling, 54 Ariz. 488, 97 P.2d 218 (1939), we hold that the listing contract in this case is not a conveyance or an incumbrance within A.R.S. § 33–452. 12 C.J.S. Brokers § 95a(2), p. 224.

■ In granting the motion for summary judgment the trial court held that there were no genuine issues as to any material facts. We believe that this was also an erroneous conclusion. In ruling

**394**

on a motion for summary judgment the court must consider the evidence most favorable to the party opposing the motion, and give the opposing party the benefit of all favorable inferences that may reasonably be drawn from the evidence. Cummings v. Prater, 95 Ariz. 20, 386 P.2d 27 (1963).

■ As we noted at the beginning of this decision, the purchase contract signed by Mr. Ronald J. Walek contained a clause that was not covered in the listing agreement. Without expressly considering the point, we will concede to the appellee that the additional clause imposed a condition. It is also true that the mere negotiating of a conditional offer does not entitle a broker to a commission. 12 C.J.S. Brokers § 86c; Morgan v. Golder, 8 Ariz.App. 438, 446 P.2d 948 (1968), and Diamond v. Haydis, 88 Ariz. 326, 356 P.2d 643 (1960). However, if the condition is waived or fulfilled the broker does become entitled to the commission. 12 C.J.S. Brokers § 86a.

■ We believe a fundamental factual dispute exists in this case on whether the appellee refused to permit the inspection of the building interior by Mr. Walek, in effect refusing to sell the property. Appellee Mr. Vance stated in his deposition:

"Q. Mr. Vance, when you first received notice from MCI that they had a buyer, this was over the telephone, wasn't it?

A. Yes.

Q. And they called you and told you they had somebody who was willing to buy your property according to the terms of the listing, isn't that true?

A. That's right.

Q. And you told them over the telephone you were no longer interested; you cancelled the listing, isn't that true?

A. That's right, from the previous conversations, yes.

Q. So, you, in essence, told them not to bother you with any purchaser, isn't that true; that you weren't willing to sell any more?

A. Certainly didn't tell them not to bother me; that I figured we would do business again the next couple of months or so.

Q. But at the time they called you and told you they had a purchaser, you said to them: The deal is off and I told you a week ago?

A. In essence, yes.

Q. And: Please don't bother me at this time with any sales in accordance with the listing; is that correct?

A. In essence, just be patient a little bit.

Q. But at the time they called you and told you they had a purchaser, you didn't want to at that time know anything about the deal or have any connection with MCI on the sale of the property?

A. We never got into the details of it. That was pretty much what was said.

Q. Because you told them not to trouble themselves any more, isn't that true?

A. Yes.

Q. And if they had come out to you at that time after the phone call, you would have told them the same thing: Don't give me any papers; I cancelled the deal; I want more time?

A. I would say so." P. 37–39 Vance's Deposition

If a prospective purchaser proposes a condition to sale to which the vendor does not object but asserts only his unwillingness to sell as a reason for his refusal to proceed with the sale, he may not defend against the broker's claim for commission upon objections to details the broker might have supplied or corrected if they were brought to his attention. Lathrop v. Gauger, 127 Cal.App.2d 754, 274 P.2d 730 (1954); Martin v. Culver Enterprises, Inc., 239 Cal.App.2d 925, 49 Cal.Rptr. 149 (1966).

█ We believe a material question of fact exists on whether the appellee waived the condition, or by his action is estopped from relying on the condition. There may be an additional question of anticipatory breach of the listing agreement. The judgment of the trial court is reversed and the case is remanded for further proceedings in accordance with this opinion.

HOWARD, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.